283 A.2d 34.

STATE *vs.* WILLIAM FRANCIS MALONEY.

STATE *vs.* WILLIAM FRANCIS MALONEY.

OCTOBER 26, 1971.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

Powers, J.   These two indictments arose out of circumstances which can be briefly summarized as follows:

It appears that on May 4, 1967, officer Nickerson of the Lincoln Police Department who was on duty in a police cruiser in that town, observed an automobile bearing Massachusetts registration plates P48109, occupied by three persons, which he decided to stop for a routine license and registration check conformable to the provisions of G. L. 1956, §§31-3-9 and 31-10-27.[1] The operator of the Massachusetts car, later identified as defendant, when asked for his license and registration, was unable to produce an operator's license but did produce a registration certificate which evidenced ownership of the vehicle of the General Rental Company an affiliate of Avis Rent A Car. When asked for his name, defendant stated that it was Philip Francis Molloy. In any event defendant's failure to have a driver's license in his possession induced officer Nickerson to request defendant to follow the police cruiser to the police station, which he did.[2] There, after checking with Massachusetts authorities it was learned that the car being operated by defendant had been reported stolen by its owner and defendant was placed under arrest for possession of a stolen car. Some 45 minutes after placing defendant under arrest, Lincoln police officers made a search of the stolen vehicle which resulted in the discovery of two revolvers concealed behind the rear seat in the vehicle.

On the state of the foregoing evidence, the grand jury returned two indictments. One, being indictment No. 35699, charged defendant with possession of a stolen motor vehicle in violation of §31-9-2 (1968 Reenactment). The

---

[1] These sections are set forth in Appendix.

[2] It should be noted that, on the state of the instant record, we cannot say that Maloney was not free to refuse to comply with officer Nickerson's request. *Compare*, however, *State* v. *Almeida*, 105 R. I. 687, 255 A.2d 151 and *State* v. *Mercurio*, 96 R. I. 464, 194 A.2d 574. In each of those cases the record established as a fact that the defendant was not at liberty to refuse to accompany the officer to the station.

second, being No. 35700, charged defendant with carrying a weapon in an automobile in violation of §11-47-8 (1969 Reenactment).

These indictments were consolidated for trial by the state and defendant moved to sever. His motion was denied by the trial justice and defendant duly excepted.

Thereafter the two cases were tried together to a Superior Court justice and a jury. After the state had concluded its cases, defendant rested and moved for a directed verdict in each case. These motions were denied and defendant duly excepted.

Following instructions to the jury, to a portion of which defendant objected in the weapons case, the jury returned a verdict of guilty in each case. Within the time authorized, defendant moved for a new trial in each case and when these motions were denied he prosecuted bills of exceptions to this court.

We consider, first, his exception to the denial of his motion to sever. It appears to be the universal rule that such a motion is addressed to the sound discretion of the trial justice, and his denial thereof will not be disturbed without a showing that defendant's right to a fair trial was thereby prejudiced. *Commonwealth* v. *Fancy,* 349 Mass. 196, 207 N.E.2d 276; *State* v. *Coleman,* 46 N. J. 16, 214 A.2d 393 and *Commonwealth* v. *Patrick,* 416 Pa. 437, 206 A.2d 295.

The defendant acknowledges such to be the general rule but contends that he was clearly prejudiced in that §11-47-8 (unlawful carrying of a weapon) places the burden on defendant of establishing the lawfulness of his possession. Thus, he argues, not wanting to take the stand in the possession of a stolen motor vehicle case, he was severely inhibited in the defense of the weapons charge. Initially the short answer to this contention would be that direct testimony on one case would not subject him to cross-

examination in the other. Again, acknowledging this rule, defendant contends, nevertheless, that taking the stand in only one case would clearly lead the jury to prejudicial conjecture in the other. Whatever merit there may be in these propositions, and we are not convinced there is any, there is the further and dispositive answer that testimony by defendant was not necessary to rebut the statutory presumption of unlawful carrying of the weapon. He could, for example, if validly licensed to carry the revolvers found in the car, introduce into evidence such a license without personally ever taking the stand by producing the record of the licensing authority.

Common also to each case is an exception to the denial of his motions for new trials. However, he has failed to demonstrate that the trial justice in reaching his decision on these motions either misconceived or overlooked material evidence on a controlling point or was clearly wrong. Failing to meet this burden, defendant's exception to those decisions are without merit. *State* v. *Contreras,* 105 R. I. 523, 253 A.2d 612.

This disposes of all of defendant's exceptions common to both cases except those taken to his motions for directed verdicts of acquittal. These motions in turn involve a consideration of evidentiary exceptions taken in each case and such exceptions will be considered subsequent to a consideration of the exceptions taken to the trial justice's instruction to the jury in indictment No. 35700.

In giving the instruction of which defendant complains, the trial justice twice read the provisions of §11-47-27. That section reads as follows:

"Proof of unlawfulness of carrying. — No negative allegation of any kind need be averred or proved in any complaint under §§11-47-1 to 11-47-34, inclusive, and the carrying or use of any firearm contrary to the provisions of said sections shall be evidence that the possession, carrying or use of any such firearm is un-

lawful, but the respondent in any such case may show any fact that would render the possession, or use, or carrying of such firearm lawful."

It is defendant's contention that this was prejudicial in that it had a strong tendency toward giving the jury the impression that the burden of establishing defendant's guilt had shifted from the state and placed on defendant the burden of proving that his possession of the weapons was lawful. The plausibility of this contention lies in taking the instruction complained of out of context.

Immediately following the reading of §11-47-27, which the trial justice was bound to do, since it is *pari materia* with §11-47-8, for violation of which defendant was on trial, the trial justice further instructed the jury as follows:

"As I have told you, the burden of proof in a criminal prosecution is on the state throughout the trial and it never shifts to any defendant. It is incumbent upon the state to prove beyond a reasonable doubt the existence of every essential element of the offense charged, and at no time is the defendant under an obligation to offer evidence to disprove the existence of such elements."

Thus, an examination of the instructions when read as a whole, persuades us that the instructions complained of were not prejudicial.

This brings us then to a consideration of defendant's contention relating to the denial of his motion for a directed verdict in each case. It is elementary that in passing on such a motion, the trial justice has the obligation of submitting the case to the jury, if the evidence, when viewed most favorably to the state would support a verdict of guilty. *State* v. *Campbell*, 99 R. I. 57, 205 A.2d 576 and *State* v. *Marshall*, 105 R. I. 288, 251 A.2d 541. An examination of the evidence which was before the trial justice when he passed on defendant's motions, discloses that the

motions were properly denied. More troublesome, however, is the question of whether certain controlling evidence considered by the trial justice was properly before him.

In *State* v. *Toti*, 94 R. I. 212, 179 A.2d 488, we pointed out that a denial of a motion for a directed verdict will be reversed if it rests for validity upon dispositive evidence improperly admitted and to which an exception was preserved.

With this rule in mind we now consider the evidentiary exceptions of each case.

1. Indictment No. 35699 (possession of stolen auto).

All of the evidence tending to establish that the automobile in question had in fact been stolen from the General Rental Company was elicited from one of its employees. This employee candidly admitted that the records concerning which he testified were not prepared by him and that he had no personal knowledge of the facts stated. In short, his testimony to which objection was seasonably made and exception taken, was, defendant argues, hearsay. The parties were not helpful to this court in their respective briefs on this point, but in oral argument defendant contended that the testimony had been admitted under the authority of §9-19-13 (book entries in regular course of business). He further argued that this statute was inapplicable to criminal cases citing *State* v. *Guaraneri*, 59 R. I. 173, 194 A. 589.[3] This oral argument took the state by surprise, it having relied in its brief upon defendant's failure to cite authorities.

Obviously, if there were no competent evidence to establish that the car in question was in fact stolen, the motion for a directed verdict should have been granted. *State* v. *Toti, supra.* We think that the ends of justice would better be served by directing both parties to submit further briefs on the issue thus presented.

---

[3] *Compare State* v. *Jamgochian*, 109 R. I. 46, 280 A.2d 320.

2. Indictment No. 35700 (possession of weapons).

In the course of trial, defendant objected to admitting the guns found in the search of the car on the grounds that they were the fruits of unlawful search. In his oral argument and brief, however, he posited this contention on the proposition that officer Nickerson was without authority to stop his vehicle on a public highway in order to conduct a routine check for license and registration. Such unlawful stopping, he argues, constituted an unlawful arrest and the search incidental thereto was a violation of his rights under the fourth amendment to the United States Constitution, citing authorities. This contention lacks merit for at least two reasons. First, from officer Nickerson's uncontradicted testimony, it appears that defendant was not arrested when stopped, but only requested to go to the station and check out the question of his license. Secondly, the validity of the routine check, if pertinent here,[4] is authorized under §31-10-27. See Appendix.

We think it clear that reference to "Every licensee" in the Rhode Island statute has reference to the operator of a motor vehicle found to be operating on any of the public highways of this state. Indeed we think that under this section it is the duty of peace officers to make such checks to insure compliance with the licensing law to the same extent as they are charged with enforcing compliance with all the laws of this state. Inconvenience to the properly licensed operator is a part of the price he pays for the maintenance of safe and orderly travel on the highways.

Be that as it may, the uncontradicted testimony establishes that defendant was not arrested until it was discov-

---

[4] We note inferentially that the validity of a routine traffic check, although not pertinent here, has been considered by us because defendant has raised for the first time a question of substantial importance to the police and the motoring public.

ered on investigation at the police station that the car in question was stolen.

Consequently, defendant's precise contention with regard to his objection to the admission of the guns is ineffectual. This circumstance would, ordinarily, be dispositive of his exception to the trial justice's ruling. However, the exception is essentially predicated on the proposition that the guns were seized in the course of an illegal search.

. In *State* v. *Brown,* 106 R. I. 453, 260 A.2d 716, we held that the search of an automobile some half hour after defendant had been validly arrested and was in custody at the police station, was an unlawful search because it clearly appeared that there were no circumstances which would have made the obtaining of a search warrant impracticable.

The fact situation in the instant case is similar to that in *Brown.* Consequently, it is quite foreseeable that should the exception here in issue be overruled on merely the ground that the precise argument was unavailing, it is equally foreseeable that defendant would seek post conviction relief. Hence, in the interest of expediting that with which we would be faced subsequently, we deem it advisable to raise the question sua sponte in these proceedings. *See State* v. *Mendes,* 99 R. I. 606, 210 A.2d 50.

In *Dorman* v. *United States,* 435 F.2d 385 (D.C.Cir. 1970) that court adhered to the rule of practicability applied by us in *State* v. *Brown, supra.* However, in *Coolidge* v. *New Hampshire,* 403 U. S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564, the United States Supreme Court reviewed the question in issue here at length. A reading of the majority opinion in *Coolidge* and the separate opinions of several of the justices suggests that a majority of the justices may possibly have relaxed the rigidity of the practicability rule. In any event, we have concluded that justice to both parties requires that they be given an opportunity to fur-

ther brief the question of whether the guns were properly admitted in evidence.

All of the defendant's exceptions are overruled in each case except those subject to further briefing. The defendant will file his brief on or before November 15, 1971, and the state will file its reply brief on or before December 1, 1971.

## APPENDIX

31-3-9. Registration card carried in vehicle.—(a) Every registration card shall at all times be carried in the vehicle to which it refers or shall be carried by the person driving or in control of such vehicle who shall display the same upon demand of a proper officer.

(b) The provisions of this section requiring that a registration card be carried in the vehicle to which it refers or by the person driving the same shall not apply to vehicles bearing dealer or bailee registration plates, or when such card is used for the purpose of making a transfer of registration of said vehicle.

31-10-27. License to be carried and exhibited on demand.—Every licensee shall have his operator's or chauffeur's license in his immediate possession at all times when operating a motor vehicle and shall display the same upon demand of any peace officer or inspector of the registry and shall, upon request by any proper officer, write his name in the presence of such officer for the purpose of being identified. However, no person charged with violating this section shall be convicted if he produces in court or the office of the arresting officer an operator's or chauffeur's license theretofore issued to him and valid at the time of his arrest.

*Richard J. Israel,* Attorney General, *Donald P. Ryan,* Asst. Attorney General, *Scott K. Keefer,* Special Asst. Attorney General, for plaintiff.

*James Cardono,* Public Defender, *Moses Kando,* Asst. Public Defender, for defendant.