297 A.2d 645.

STATE *vs.* SAMUEL L. WILSON.

DECEMBER 12, 1972.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

JOSLIN, J. Samuel L. Wilson was tried before a jury in the Superior Court on an indictment charging him with carrying a pistol on or about his person unlawfully and without a license, in violation of G. L. 1956 (1969 Reenactment) §11-47-8. He was convicted and sentenced to serve a term of one year at the Adult Correctional Institutions, but execution has been stayed and he is at liberty on bail pending prosecution of a bill of exceptions in this court. He presses only two exceptions: one is to the denial of his pretrial motion to suppress evidence allegedly the product of an illegal search and seizure, and the other is to the trial justice's refusal to grant him a new trial.

At the hearing on the motion to suppress it appeared that shortly after midnight on May 10, 1969, Sergeant Grover of the Providence Police Department was on duty in a police cruiser in a "notorious" area in Providence. As he turned into Portland Street from Pine Street his further

progress was blocked by an automobile which was parked, facing him, in the middle of the street and whose occupants were apparently conversing with pedestrians. Within a few moments the parked automobile proceeded on its way and, as it passed him, the sergeant noted that its registration number was Rhode Island SK 960. Believing that the number was on the current "wanted auto list," he checked by radio with his dispatcher. Upon being advised that the vehicle (and apparently defendant also) was wanted in connection with a larceny,[1] he followed it and signaled the operator — the defendant here — to pull over to the curbing and stop. The sergeant then left his cruiser, approached the stopped vehicle, asked defendant for his license and registration, and requested him to get out of the automobile. As defendant was leaving the automobile the exposed portion of an object he had observed defendant attempting to push into the separation between the cushion and the back of the front seat, came into his view and he identified it as a gun barrel. He removed that object from the place where defendant had pushed it, saw that it was indeed a pistol and ordered defendant taken to the police station.

The defendant admits he was operator of the automobile at the time it was stopped by Sergeant Grover and says it was furnished him as a courtesy car by the auto body shop where he had left his own automobile to be painted. He categorically denies ever having seen the pistol before

---

[1]The record discloses the following colloquy during defendants examination of Sergeant Grover:

"Q As far as you were concerned, at that point in time he was a suspect of larceny?

"A Suspect of larceny. I checked with my dispatcher to see what this auto was wanted for and I was informed it was wanted for larceny, *being operated by one, Samuel Wilson.*" (emphasis added)

and asserts that the police discovered it as they were searching "underneath the seat of the car."

In ruling on the motion to suppress, the trial justice found that Sergeant Grover had told "what happened," that he had "picked up something which he saw and recognized in plain sight," and that there was therefore "no unlawful seizure and no unlawful search."

The defendant does not challenge the trial justice's resolution of the conflicts in the testimony. He argues, however, that there was no probable cause to arrest him, and that the evidence subsequently uncovered was therefore illegally seized and should have been suppressed. We do not reach that issue[2] since the seizure in this case does not depend for its legitimacy on a lawful arrest, but can be justified under the plain view exception to the warrant requirement.

That exception, while encompassing, is not sufficiently so to validate a warrantless search and seizure unless the police officer who first discovered the object (1) neither anticipated nor knew in advance where it might be located, and (2) had a right to be where he was and could justify his initial intrusion by a warrant for another object, hot

---

[2]Had we reached it, one concern would have been whether information reaching an arresting officer through official channels can provide probable cause for an arrest. Some courts say that it can, but only if the arresting officer's sworn testimony is supplemented by that of the officer supplying the information explaining how he obtained it. *Remers* v. *Superior Court,* 2 Cal. 3d 659, 666-67, 470 P.2d 11, 15, 87 Cal. Rptr. 202, 206-07 (1970); *Stanley* v. *State,* 230 Md. 188, 192, 186 A.2d 478, 481 (1962). A contrary holding, these courts say, might result in "every utterance of a police officer" instantly acquiring "the dignity of official information; 'reasonable cause' or 'reasonable grounds' * * *" and a dissolution of fourth amendment safeguards. *People* v. *Pease,* 242 Cal. App. 2d 442, 448-49, 51 Cal. Rptr. 448, 453 (1966). Other decisions reach a contrary conclusion and do not require supporting testimony. *State* v. *Keeby,* 159 Conn. 201, 206, 268 A.2d 652, 655 (1970), *cert. denied,* 400 U. S. 1010, 91 S.Ct. 569, 27 L.Ed.2d 623 (1971); *Daniels* v. *United States,* 393 F.2d 359 (D.C. Cir. 1968).

pursuit, search incident to a lawful arrest, or some other legitimate reason for being present unconnected with the search directed against the accused. This is the latest teaching of the Supreme Court which, in a plurality opinion, summarizing what has preceded, states that "[w]hat the 'plainview' cases have in common is that the police officer in each of them had a *prior justification for an intrusion* in the course of which he came *inadvertently* across a piece of evidence incriminating the accused." *Coolidge* v. *New Hampshire*, 403 U. S. 443, 466, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564, 583 (1971). (emphasis added)

Was there prior justification for the initial intrusion in this case? Certainly the sergeant could, in any event, have stopped defendant for a routine license and registration check. *State* v. *Maloney*, 109 R. I. 166, 173, 283 A.2d 34, 38 (1971). Moreover, nothing in the fourth amendment required him to ignore the information received through official channels linking the vehicle observed stopped in the middle of a "notorious" street (and perhaps its operator) to involvement in a larceny. To hold otherwise would be to read the fourth amendment as if it said that these circumstances would not permit defendant to be stopped and briefly detained in order to investigate possible criminal activity. This would be tantamount to saying that "* * * a policeman who lacks the precise level of information necessary for probable cause to arrest * * * [must] simply shrug his shoulders and allow a crime to occur or a criminal to escape." *Adams* v. *Williams*, 407 U. S. 143, 145, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612, 616 (1972). The Court rejected that limited approach, however, in favor of "an intermediate response" in appropriate circumstances. *Id.* at 145-46, 92 S.Ct. at 1923, 32 L.Ed.2d at 616-17.

The very least which the situation confronting Sergeant Grover dictated was such "an intermediate response," and he responded by approaching defendant, asking for his li-

cense and registration, and ordering him to get out of his automobile. Good police work required no less. *See Terry* v. *Ohio,* 392 U. S. 1, 22-23, 88 S.Ct. 1868, 1880-81, 20 L.Ed.2d 889, 906-07 (1968).

There was, then, a prior justification for the intrusion on defendant's privacy in the course of which Sergeant Grover was not required to blindfold himself or to turn aside from the object which inadvertently came into his view and which he identified first as a gun barrel and then as a pistol. Instead, he was clearly within his rights, when, though lacking either a warrant or probable cause for arrest, he seized the pistol. The trial justice did not err, therefore, when he denied defendant's motion to suppress.

There remains the ruling denying defendant's motion for a new trial. He argues, in substance, that the trial justice, instead of complying with our rule and passing upon the evidence, its weight, and the credibility of the witnesses, stated only that he and the jury disagreed on how the factual issue in the case should have been resolved. His failure in this respect, defendant says, deprives his decision of the substantial weight to which it would otherwise normally be entitled.[3]

Even the assumption that this argument is meritorious would not thereby gain defendant a new trial. Instead, it would burden him with establishing that the competent evidence supporting the verdict, if believed, is insufficient to

---

[3]In deciding the motion for a new trial, the trial justice said, "This is a troublesome case, but not for the reason that the defendant gave here. I think if I'd been trying, jury waived, I would not have convicted this defendant, but it doesn't follow because I, in a jury waived trial, would not have convicted that I can set this jury's verdict aside." While there is no cause for us to square this statement with his ruling on the motion to suppress, see p. 743, 297 A.2d 647, *supra,* one explanation could be that in one instance he was applying a proof beyond a reasonable doubt standard; in the other a proof by a fair preponderance-of-the-evidence test. *See Lego* v. *Twomey,* 404 U. S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972).

746

prove him guilty beyond a reasonable doubt. *State* v. *Contreras,* 105 R. I. 523, 531, 253 A.2d 612, 617 (1969). This is a burden which, on this record where credibility is the only issue, defendant cannot possibly sustain.

The defendant's exceptions are overruled and the case is remitted to the Superior Court for further proceedings.

*Richard J. Israel,* Attorney General, *Donald P. Ryan,* Asst. Attorney General, for plaintiff.

*William F. Reilly,* Public Defender, for defendant.