317 A.2d 449.

STATE *vs.* JOHN EDWARD CARILLO.

APRIL 3, 1974.

PRESENT: Paolino, Joslin, Kelleher and Doris, JJ.

JOSLIN, J. In July of 1969 the defendant went to trial before a judge and jury in the Superior Court on an indictment charging him with unlawful possession and control of a firearm after a previous conviction of a crime of violence in violation of P. L. 1968, ch. 183, sec. 2, now G. L. 1956 (1969 Reenactment) §11-47-5.[1] During that trial the defendant moved to suppress the firearm as evidence which had been illegally obtained.[2] When that motion was denied he requested and was granted leave to retract his plea of not guilty to plead guilty. The case was then continued to a day certain for sentencing. On that day the defendant, reversing his stance, moved to withdraw his substituted plea of guilty and to reinstate his earlier plea of not guilty. That motion was denied. Based upon an unusual and pecu-

---

[1]General Laws 1956 (1969 Reenactment) §11-47-5 reads in pertinent portion:

"No person who has been convicted in this state or elsewhere of a crime of violence or who is a fugitive from justice shall purchase, own, carry, transport or have in his *possession* or under his *control* any firearm." (emphasis added)

[2]At the time of that trial a fourth amendment challenge to the admission of evidence could be made during trial. *State* v. *Leavitt,* 103 R. I. 273, 237 A.2d 309 (1968). We have since returned to our earlier practice and now require a pretrial motion to suppress. *State* v. *Maloney,* 111 R. I. 133, 300 A.2d 259 (1973).

liar factual context, we sustained the defendant's exception to that ruling; our remand order directed the Superior Court to permit the defendant to reinstate the plea of not guilty and then to conduct such further proceedings as might be appropriate. *State* v. *Carillo,* 108 R. I. 8, 271 A.2d 625 (1970). Those further proceedings consisted of a 1971 trial before a judge and jury which resulted in a guilty verdict and imposition of sentence. This second case is now here on the defendant's bill of exceptions.

The record of the second trial discloses the following facts. At about 7:30 p.m. on October 1, 1968, Detective Vincent Vespia, Jr., of the state police, was patrolling in a police cruiser in Providence with two other police officers. He observed defendant operating a motor vehicle without a front registration plate,[3] and signalled him to pull over to the side of the road. It then appeared to the detective that defendant, before coming to a stop "* * * either pick[ed] something up or dropp[ed] something on the floor of the vehicle on the driver's side."

When both vehicles stopped, the detective alighted from the cruiser, approached defendant's automobile, and asked for his license and registration. The defendant exhibited his driver's license and advised that the vehicle was not registered, whereupon the detective asked defendant to get out of his automobile. As he did, the detective observed protruding from under the driver's seat and in plain view an object which appeared to be the hand grip of a revolver. He promptly seized the object and, after removing it from defendant's vehicle, identified it as a .38-caliber revolver. A further search under the front seat produced a black bag

---

[3]General Laws 1956 (1968 Reenactment) §31-3-18 requires a registration plate to be displayed in the front of a motor vehicle. Under §31-27-13, failure to do so is a misdemeanor, the penalty for which is a fine of not more than $500, or imprisonment for not more than one year, or both.

containing live ammunition, expended shells, and a .32-caliber revolver.

Following this description of what occurred at the scene of the arrest, and before the prosecution offered the .38-caliber revolver as an exhibit, the trial justice learned that the judge who presided at the first trial heard evidence in the absence of the jury on its admissibility and refused to suppress it. In the light of that ruling and of our decision in State v. Carufel, 106 R. I. 739, 263 A.2d 686 (1970), the trial justice then inquired whether defendant was objecting upon different grounds from those urged at the earlier trial.[4] The defendant assured him that there were none. His only basis for objecting, he said, was a belief that the ruling in the earlier case was erroneous. Thereupon, the trial justice overruled the objection, but without independently evaluating its merit and in sole reliance upon the doctrine of the law of the case, which, as he viewed it, required him to accept the earlier ruling as dispositive in all further proceedings in the Superior Court.

While conceding that such a doctrine may have a place in our procedure as to interlocutory matters,[5] defendant observes that his prior motion to suppress was made during rather than before trial, that what this court ordered was in effect a complete trial de novo, and that he was therefore entitled to a fresh and independent determination of all matters, including motions ruled upon during the earlier trial.

---

[4]In the Carufel case we held that the denial of an accused's motion to suppress at a pretrial hearing would not preclude him, at least in the absence of a waiver or a deliberate bypass for strategic reasons, from advancing new grounds therefor at the trial. But see State v. Maloney, 111 R. I. 133, 300 A.2d 259 (1973).

[5]See, e.g., Goldstein v. Rhode Island Hosp. Trust Nat'l Bank, 110 R. I. 580, 587-88, 296 A.2d 112, 116-17 (1972); Payne v. Superior Court, 78 R. I. 177, 183-85, 80 A.2d 159, 163-64 (1951).

Even assuming that defendant is correct in these contentions and that the ruling should not have been based on the doctrine of the law of the case or even on the related principle of collateral estoppel, it does not necessarily follow that the trial justice erred in denying defendant's motion to suppress and in admitting the revolver into evidence. This is so because that ruling, if correct, merits our support irrespective of the reasons relied upon by the trial justice. *Bric's Market, Inc.* v. *State,* 105 R. I. 572, 577, 253 A.2d 590, 592 (1969); *Lancia* v. *Grossman's of Rhode Island, Inc.,* 100 R. I. 407, 411, 216 A.2d 517, 520 (1966); *Budwee* v. *New England Motors, Inc.,* 99 R. I. 663, 674, 210 A.2d 131, 137-38 (1965); *Williams* v. *Rhode Island Hosp. Trust Co.,* 88 R. I. 23, 44, 143 A.2d 324, 336 (1958).

The initial question for us, then, is whether the warrantless search of the automobile and seizure of the .38-caliber pistol acquired legitimacy by reason of the pistol's having been in plain or open view when defendant was arrested. This exception to the warrant requirement applies if "* * * the police officer who first discovered the object (1) neither anticipated nor knew in advance where it might be located, and (2) had a right to be where he was and could justify his initial intrusion by a warrant for another object, hot pursuit, search incident to a lawful arrest, or some other legitimate reason for being present unconnected with the search directed against the accused." *State* v. *Wilson,* 110 R. I. 740, 743-44, 297 A.2d 645, 647 (1972).

Here, Detective Vespia's attention was claimed by defendant's operation of a motor vehicle without a front registration plate. That was a violation of the motor vehicle law, for which an arrest was authorized. Therefore, Detective Vespia was clearly within his authority when he ordered defendant to step out of his automobile. As defendant complied, the police officer inadvertently observed the hand grip of the pistol which was in plain view. Noth-

ing in the fourth amendment commanded him to avert his gaze from that plainly visible object. He clearly had a right to be in a position to have that view, and the object was therefore subject to a warrantless seizure. *Coolidge* v. *New Hampshire,* 403 U. S. 443, 466, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564, 583 (1971); *Harris* v. *United States,* 390 U. S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); *Brown* v. *State,* 15 Md. App. 584, 292 A.2d 762 (1972); *State* v. *Wilson, supra.*

The defendant does not even tangentially question the applicability of the plain-view exception, but contends instead that the seizure of the .38-caliber pistol was constitutionally invalid under the line of cases which condemns, absent unusual exigencies, a full search of a person or his automobile following a custody arrest for a minor traffic violation.[6] That contention is clearly inapposite, for here we are not concerned with Detective Vespia's right to conduct a full search of defendant's automobile, but with the arresting officer's unquestioned "* * * right to seize items properly subject to seizure because in open view at the time of arrest * * *." *Coolidge* v. *New Hampshire, supra* at 509, 91 S.Ct. at 2059, 29 L.Ed.2d at 608 (Black, J., concurring and dissenting).

The legitimacy of the search which produced the black bag containing the .32-caliber revolver presents a different problem. The state does not contend that it was in Detective Vespia's plain view, and agrees that it was uncovered only after a warrantless search had been made of defendant's motor vehicle. It justifies that search, however, on the ground that Detective Vespia had probable cause to believe the vehicle contained contraband or another weapon, or, alternatively, that what was done fell within the permissible

---

[6]*E.g., State* v. *Soroka,* 112 R. I. 392, 311 A.2d 45 (1973); *contra, United States* v. *Robinson,* 414 U. S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973).

scope of a search incident to defendant's valid arrest for the unlawful possession of the .38-caliber revolver.[7]

While the state's approach appears sound, we do not pass upon it, inasmuch as defendant's possession and control of the .32-caliber revolver added nothing to the state's case. Its obligation was to prove possession and control of a firearm—not firearms—and it met that obligation when it produced evidence that defendant had control and possession of a .38-caliber revolver. That evidence was uncontradicted and unimpeached, and nothing in the record in any way reflects adversely upon its weight or credibility. It provides overwhelming and untainted support for defendant's conviction, and satisfies us beyond a reasonable doubt that the subsequent admission of the .32-caliber revolver in no way contributed to the verdict. Thus, that admission, even if error, was harmless. *Harrington* v. *California,* 395 U. S. 250, 89 S. Ct.1726, 23 L.Ed.2d 284 (1969); *Chapman* v. *California,* 386 U. S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 710-11 (1967); *see also State* v. *Duffy,* 112 R. I. 276, 283, 308 A.2d 796, 800 (1973); *State* v. *Getter,* 108 R. I. 437, 276 A.2d 274 (1971); *State* v. *Danahey,* 108 R. I. 291, 274 A.2d 736 (1971).

The defendant also assigns as error the trial justice's refusal to grant his motion to recess the trial. That motion was made after the state had rested, and its purpose was to gain an opportunity to produce as a witness an inmate of a prison in Norfolk, Massachusetts. The witness was Charles R. Pugliese, whose exculpatory statement defendant produced at his first trial when he asked leave to withdraw his guilty plea and substitute one of not guilty. Although defendant made no offer of proof, he apparently anticipated

[7]*Carroll* v. *United States,* 267 U. S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925) (probable cause); *see Preston* v. *United States,* 376 U. S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964) (search incident); *see also Cady* v. *Dombrowski,* 413 U. S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973).

that Pugliese, if he testified, would repeat what he had said in that statement.[8]

Before the trial justice acted upon that request, he inquired whether defendant had attempted to summon Pugliese under the Uniform Rendition of Prisoners as Witnesses in Criminal Proceeding Act, G. L. 1956 (1969 Reenactment) ch. 16.1 of title 12, as enacted by P. L. 1970, ch. 4. When counsel advised that he had not, the trial justice noted that the case was then in its third day, and he said it seemed to him that "* * * if the [d]efendant really wanted to get somebody in here from Norfolk * * * he would have made the necessary arrangements."

Defense counsel neither then nor at any other time advised the court as to what attempts or arrangements had been made to procure Pugliese's attendance or testimony, or whether he could provide any assurance that such attendance or testimony would be forthcoming if a continuance were granted. Instead, his only response was that Pugliese was his sole witness, and that "[i]t was a last-minute determination on the part of the [d]efendant that this witness was essential, an essential witness, and therefore it is for that reason that our request came this late. In other words, the decision was just made by the [d]efendant."

Later, defendant contradicted that statement, at least in part, when he availed himself of the opportunity afforded by the trial justice to address the court. He said that Pugliese was his only witness and that he had wanted to call him "from the beginning," but had been persuaded from doing so by his attorney.

Unquestionably, an accused in a criminal case must be protected in his constitutional right to procure such witnesses and evidence as are necessary to permit a full defense to the offense charged, and a reasonable adjournment

---

[8]That statement is set out in full in *State* v. *Carillo,* 108 R. I. 8, 11, 271 A.2d 625, 626 (1970).

of the trial may be necessary to effectuate that right. *State v. Patriarca*, 112 R. I. 14, 37-38, 308 A.2d 300, 315 (1973); *State v. Rossi*, 71 R. I. 284, 43 A.2d 323 (1945). But the existence of that right does not require a continuance upon request as a matter of course, especially when an accused has failed to use due diligence to obtain a witness' attendance for the trial as set or when that witness' absence is fairly attributable to the accused's fault. *State v. Patriarca, supra.*

Here, defendant had known since his first trial what Pugliese might say in his defense. He also knew where Pugliese could be found, and that the Uniform Rendition of Prisoners as Witnesses in Criminal Proceeding Act afforded him with a possible means of securing Pugliese's attendance. Nonetheless, it was not until the waning moments of the trial that he sought to obtain the presence of the only person who could possibly have assisted him and the only witness he hoped to present.

Whether or not upon this presentation defendant was entitled to a continuance rested in the trial justice's sound discretion. *State v. Patriarca, supra.* He concluded that in the light of all the circumstances defendant's request for a continuance was in reality nothing more than a "last-minute attempt to delay," and accordingly he denied the request. We are unable to say that this denial constituted an abuse of his discretion.

The defendant's final exception is to the following portion of the trial justice's instructions to the jury:

> "Possession means having a thing in one's power or in one's custody. It is the act or condition of having a thing in one's control, and control means having the power or authority to manage to have something under your power, under your domination. Of course, ladies and gentlemen, to be within the prohibition of the statute, the possession or control must be a knowing and voluntary one."

While defendant concedes that this instruction may be technically correct, he nonetheless condemns it as not adequately conveying to the jurors that the state's burden was to establish a conscious possession and an intentional control of an object known by defendant to be a firearm.

While we agree with defendant that *State* v. *Motyka,* 111 R. I. 38, 298 A.2d 793 (1973), and *State* v. *Gilman,* 110 R. I. 207, 215, 291 A.2d 425, 430 (1972), enunciated these as the essential elements of an illegal possession, we are unable to agree that the instruction as given could reasonably have misled the jury into convicting upon some lesser or different proof. True, the trial justice did not use the *Motyka* or *Gilman* language in his instruction, but those cases had not been decided when defendant was tried.

Even if they had been, the trial justice would have been under no compulsion to quote from them. Instead, he was free to charge in his own language so long as he correctly stated the applicable rule of law. *State* v. *Contreras,* 105 R. I. 523, 538-39, 253 A.2d 612, 621 (1969); *State* v. *Jefferds,* 89 R. I. 272, 282, 152 A.2d 231, 236 (1959), *aff'd on rehearing,* 91 R. I. 214, 162 A.2d 536 (1960); *State* v. *Shea,* 77 R. I. 373, 376, 75 A.2d 294, 296 (1950).

In our judgment the trial justice satisfied that obligation. Although his instruction was brief and succinct, that is ofttimes to be commended, especially where, as here, it expresses the essence of the law. A fair reading of the instruction convinces us that a jury of ordinarily intelligent lay persons listening to it at the close of the trial could not reasonably have been misled as to what had to be proved in order to convict under §11-47-5. No more was required. *State* v. *Contreras, supra; see State* v. *Bruyere,* 110 R. I. 426, 428, 293 A.2d 311, 312-13 (1972); *State* v. *Hull,* 106 R. I. 285, 288, 258 A.2d 791, 793 (1969); *State* v. *Reid,* 101 R. I. 363, 366, 223 A.2d 444, 446-47 (1966).

The defendant's exceptions are overruled, and the case is remitted to the Superior Court for further proceedings.

Mr. Chief Justice Roberts did not participate.

*Richard J. Israel*, Attorney General, *Donald P. Ryan*, Asst. Attorney General, *Edward E. Dillon, Jr.*, Special Asst. Attorney General, for plaintiff.

*William F. Reilly*, Public Defender, *Eugene F. Toro*, Asst. Public Defender, *Carmine A. Rao*, Asst. Public Defender, for defendant.