366 A.2d 539.

STATE *vs.* RICHARD T. RATTENNI.

NOVEMBER 30, 1976.

PRESENT: Joslin, Kelleher and Doris, JJ.

KELLEHER, J. The defendant, Richard T. Rattenni, appeals his conviction for carrying a weapon in an automobile in violation of G. L. 1956 (1969 Reenactment) §11-47-8. He claims error on two points: first, that the trial justice erroneously denied the motion to suppress the gun and bullets; and, second, that in closing argument the prosecutor so inflamed and prejudiced the jury that the defendant was denied a fair trial. We find both contentions without merit and affirm the judgment below.

On the spring night of May 15, 1972, Urbano Prignano, Jr. and David P. Deignan, Jr., two members of the Providence Police Department's tactical unit, were on patrol in an unmarked police vehicle. At that time they had received information that a man possessing a gun was driving a blue or green Thunderbird with a broken taillight. Officer Prignano had known the informant for approximately a month, while Deignan had known the informant for over a year and knew the informant had supplied information to other members of the department. Later that evening the officers observed a car fitting the Thunderbird description driving along Bridgham Street. They ordered the driver to stop his vehicle. The driver drove into a nearby parking lot and stopped.

The officers testified that they approached the car, one going to each side. Officer Prignano asked Mr. Rattenni for his license and registration. Apparently looking for the documents, Rattenni opened a compartment between the two seats, at which time a light in the car or compartment came on, exposing the gun to Prignano's keen eye.

The officer removed Rattenni and his gun from the car and subsequently removed the bullets from the gun. No search was conducted prior to the discovery of the pistol, and Rattenni was not arrested until after such discovery. The police did not ask Rattenni to open the compartment.

Rattenni maintains that the tip which the officers received did not constitute probable cause to search or arrest without a warrant. This, however, is not a probable cause case. Previously, this court has held that good police work may require an officer to make a brief investigative stop, an "intermediate response," on less than probable cause in appropriate circumstances. *State* v. *Wilson*, 110 R.I. 740, 297 A.2d 645 (1972). *See Adams* v. *Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *Terry* v. *Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). It would be Rattenni's contention that the officers should ignore the tip because it would not meet the reliability requirements for a warrant. To take that position would be tantamount to saying that "* * * a policeman who lacks the precise level of information necessary for probable cause to arrest * * * [must] simply shrug his shoulders and allow a crime to occur or a criminal to escape." *Adams* v. *Williams, supra* at 145, 92 S.Ct. at 1923, 32 L.Ed.2d at 616. We have already rejected that course of action. *State* v. *Wilson, supra* at 744, 297 A.2d at 648.

Furthermore, we do not find the factual distinction between the police radio report in *Wilson* and the informant's tip in this case to be persuasive. Realistically, we realize that police depend heavily on information from their street contacts. The informant here was known to both policemen and had been used by other members of the department. The tip was sufficient to warrant a brief investigative stop. *See United States* v. *Jefferson*, 480 F.2d 1004 (4th Cir.), *cert. denied*, 414 U.S. 1001, 94 S.Ct. 354, 38 L.Ed.2d 236 (1973). When the officers received informa-

tion of a man carrying a gun in his car, and a car meeting the given description was spotted, it was their duty to investigate. *Davis v. United States,* 284 A.2d 459 (D.C.Ct. App. 1971). Good police work required no less. *State v. Wilson, supra. See Terry v. Ohio, supra.* Moreover, it is completely within an officer's power to stop a car for a license and registration check. General Laws 1956 (1968 Reenactment) §§31-3-9, 31-10-27; *State v. Maloney,* 109 R.I. 166, 283 A.2d 34 (1971). Consequently, the police were justified in making the initial intrusion.

Rattenni has contended that even if the officers were justified in stopping him, they could not seize the gun because their primary purpose in questioning him was to see whether he had a gun; hence, their discovery of the weapon was not inadvertent.[1] We reject this argument.

At the outset we note that the discussion of plain-view cases in *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), recognizes two general types of situations. First, there are cases where evidence is discovered in the course of some legitimate search: by warrant, hot pursuit or incident to arrest. *Coolidge v. New Hampshire, supra* at 465, 91 S.Ct. at 2037-38, 29 L.Ed.2d 582. Second, there are situations where there is no search. *Coolidge v. New Hampshire, supra* at 466, 91 S.Ct. at 2038, 29 L.Ed.2d at 583, *citing Harris v. United States,* 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968). The case before us today falls into the latter group. Officers Prignano and Deignan opened no doors, no trunks, no compartments;

---

[1]The term "inadvertent" is often employed in the so-called "plainview" cases. It first found its place in the legal lingo in *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), where four members of the Court said: "What the 'plain view' cases have in common is that the police officer in each of them had a prior justification for an intrusion in the course of which he came inadvertently across a piece of evidence incriminating the accused." *Id.* at 466, 91 S.Ct. at 2038, 29 L.Ed.2d at 583.

nor did they ask Rattenni to open anything for them. Nobody violated Rattenni's privacy. *See United States* v. *Nunn,* 525 F.2d 958, 959 (5th Cir. 1976). The only search which might arguably have been conducted was with their eyes. Justice should be blind, but law enforcement should not. When officers have reason to believe that a person whom they are questioning is armed, we would hope that they would keep their wits about them and their eyes open. To do otherwise would be less than prudent. *See Davis* v. *United States, supra.*

Secondly, although the officers had information that Rattenni possessed a gun, this fact does not preclude their discovery of the weapon from being inadvertent. Rattenni seeks the best of both worlds. On the one hand, he argues, the tip was worthless and unverified, giving no basis for probable cause to search or arrest, but in the next breath he says this tip was so good that the officers "kn[e]w in advance the location of the evidence and intend[ed] to seize it * * *." *Coolidge* v. *New Hampshire, supra* at 470, 91 S.Ct. at 2040, 29 L.Ed.2d at 585.

We find that this is just not the case. Here the officers had sufficient grounds to investigate, but they did not know whether or not a gun was in the car, if so, where it would be, or that Rattenni would inadvertently reveal it to them. This was not a case where "* * * the police know in advance they will find [the evidence] in plain view and intend to seize [it]." *Coolidge* v. *New Hampshire, supra* at 471, 91 S.Ct. at 2041, 29 L.Ed.2d at 586. The police were justified in seizing the gun which they lawfully discovered in plain view. *United States* v. *Jefferson, supra; Davis* v. *United States, supra; accord, United States* v. *Nunn, supra; United States* v. *Rollerson,* 491 F.2d 1209 (5th Cir. 1974); *United States* v. *Knight,* 451 F.2d 275 (5th Cir. 1971). *See also State* v. *Wilson, supra.*

Rattenni's second challenge to the verdict is that the

prosecutor so inflamed the jury as to preclude a fair trial. The statement in question came during the prosecutor's closing argument when he said:

"* * * my brother referred to the gun as being a pretty old one. It's not exactly the most impressive weapon that one can look at. It fired. It fired enough to kill a person, if necessary."

It is Rattenni's contention that the trial justice abused his discretion by failing to give cautionary instructions regarding this statement. In *State* v. *Bowden,* 113 R.I. 649, 324 A.2d 631 (1974), we observed that the test is "* * * whether the allegedly offensive remarks were so flagrantly impermissible * * * [as to deny] defendants the fair and impartial trial which was their due." *Id.* at 654, 324 A.2d at 635. In our opinion, the remarks in question were neither flagrant nor impermissible.

Unfortunately the word and concept "kill" are not the least bit unfamiliar to us — from the Little League baseball diamond to Kojak; from Walter Cronkite's nightly intonation of the dead that are pictorially portrayed at the various trouble spots of today's world to the Thursday night movie, kill has become an unremarkable word. It no longer engenders revulsive thoughts or inflames the passions.

Moreover, the prosecutor was not telling the jury anything which they could not have concluded from the evidence adduced at trial. Officer Prignano testified that when he seized the gun it was loaded. Rattenni's trial counsel[2] had joined the prosecutor in stipulating that the weapon was a firearm which could have been fired and which was subsequently test fired and proven operable. It is clear that from the evidence before them the jury could have reached the conclusion suggested by the prosecutor. We have stated in such a situation that "[i]n any event,

_____

[2]Rattenni's appellate counsel was not his trial counsel.

should they reach that conclusion it would be based on the evidence to which counsel for the state pointed and not on an assumption that the prosecution had knowledge of which the jury was unaware." *State* v. *Plante,* 111 R.I. 386, 391, 302 A.2d 804, 807 (1973).

The defendant's appeal is denied and dismissed, the judgment of conviction is affirmed, and the case is remanded to the Superior Court.

Mr. Chief Justice Bevilacqua and Mr. Justice Paolino did not participate.

*Julius C. Michaelson,* Attorney General, *John R. McDermott,* Special Asst. Attorney General, for plaintiff.

*Bevilacqua & Cicilline, Joseph A. Bevilacqua, Jr.,* for defendant.