387 A.2d 1046.

STATE *v.* GEORGE A. MARSHALL.

JUNE 19, 1978.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

DORIS, J.   On March 6, 1974, the defendant George A. Marshall was driving a brown four-door station wagon on Memorial Boulevard in Newport. His vehicle was stopped for speeding by an unmarked police car, and the defendant was arrested when marijuana was found on the floor behind the driver's seat. The defendant was subsequently indicted and charged with violating G.L. 1956 (1968 Reenactment) §21-28-31 (possession of cannabis) and §21-28-32 (possession of cannabis with intent to sell.)[1]

The defendant moved to suppress the introduction into evidence of the marijuana as having been the product of an illegal search; however, his motion to suppress was denied after a hearing on November 14, 1975. Following the denial of his motion, defendant admitted to the facts alleged in the indictment and the trial justice found him guilty on both counts of the indictment. The defendant appeals.

The sole issue before us on appeal is the correctness of the trial justice's denial of defendant's motion to suppress.

Only two witnesses were presented at the suppression hearing, Officer Stephen Weaver of the Newport Police Department and defendant. The second police officer at the scene, Officer Ottilige of the Newport Police Department, did not testify. His unexplained failure to be called as a witness is a primary reason why this appeal is now before us.

It is uncontroverted that the two police officers did not possess a warrant to search defendant's vehicle. The state, however, seeks to justify the seizure of the marijuana under

---

[1]The defendant was indicted by a Newport grand jury on June 10, 1974. General Laws 1956 (1968 Reenactment) §§21-28-31 and 21-28-32 were repealed by P.L. 1974, ch. 183, §1, effective July 1, 1974.

the "plain view" exception to the fourth amendment warrant requirement. *Collidge* v. *New Hampshire*, 103 U.S. 443, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971); *State* v. *Rattenni*, 117 R.I. 221, 366 A.2d 539 (1976); *State* v. *Wilson*, 110 R.I. 740, 297 A.2d 645 (1972).

The defendant testified at the suppression hearing that he was not speeding at the time his vehicle was stopped. He further testified that the marijuana bricks seized by the police were wrapped in blue paper and covered with tinfoil. The wrapped bricks were then covered by a grocery bag which was in turn placed inside a plastic garbage bag. As a result of these wrappings, defendant testified that the marijuana was "completely covered" at the time he placed it in his automobile.

Officer Weaver testified that at the time of the arrest he was a member of the Tactical Patrol Force of the Newport Police Department, and that his primary concern as a member of that unit was narcotics. He stated that Officer Ottilige had received a tip earlier that evening that a narcotics transaction would occur in the area and that the transaction would involve a brown automobile. Despite this tip, Weaver insisted that defendant's brown automobile was stopped for no other reason than speeding.

After defendant's vehicle was pulled over by the unmarked police car, Weaver testified that he went to the left-hand, or driver's, side of the automobile to obtain defendant's license and registration. Officer Ottilige went to the right-hand, or passenger's side. Subsequently, Weaver testified, Ottilige came around to the driver's side of the vehicle and directed Weaver's attention to something in the car by stating "[l]ook at this" or words to that effect. Ottilige opened the rear door of the vehicle, at which time Weaver stated he saw a package on the floor with part of the marijuana exposed as the result of a tear in the package.

Officer Weaver attempted to testify that Ottilige had seen the marijuana from the right-hand side of the vehicle, but his

testimony was objected to by defense counsel and the trial justice sustained the objection.

In denying defendant's motion to suppress, the trial justice found that defendant's vehicle was properly stopped for speeding and that the "plain view" exception was applicable in this case as Officer Ottilige saw the marijuana from the right-hand side of the car.

The defendant advances two arguments in support of his position that the trial justice erred in denying his motion to supress. First, he asserts that there was insufficient evidence presented from which the trial justice could have found the "plain view" exception applicable. Second, he argues that the state's failure to call Officer Ottilige as a witness denied him his sixth amendment right to confront the witnesses against him. Because of our view of this case, we do not reach the constitutional claim advanced by defendant.

It is a well-established principle that evidence in plain view of a police officer may be seized under certain circumstances. First, the police officer must have had prior justification for the initial intrusion into a suspect's privacy, either by a warrant or one of the recognized exceptions to the warrant requirement, such as a search incident to an arrest or "hot pursuit." *Collidge* v. *New Hampshire, supra* at 465-66, 91 S. Ct. at 2037-38, 29 L. Ed. 2d at 582-83. The doctrine is also applicable in situations where the police came across evidence during the regular course of their duties when they are not searching for evidence against a suspect. *Harris* v. *United States*, 390 U.S. 234, 88 S. Ct. 992, 19 L. Ed. 2d 1067 (1968).

Second, the discovery of the evidence must be made inadvertently. Third, the police must be immediately aware that they have evidence before them. *Coolidge* v. *New Hampshire, supra* at 466, 91 S. Ct. at 2038, 29 L. Ed. 2d at 583. *See generally State* v. *Rattenni, supra* at 224, 366 A.2d at 541; *State* v. *Carillo*, 113 R.I. 32, 36, 317 A.2d 449, 452-53

(1974); *State* v. *Duffy,* 112 R.I. 276, 282, 308 A.2d 796, 800 (1973); *State* v. *Wilson, supra* at 743-44, 297 A.2d at 647.

Furthermore, it is the state's burden to prove that the requirements of a warrantless search or seizure have been met. *Bumper* v. *North Carolina,* 391 U.S. 543, 548, 88 S. Ct. 1788, 1792, 20 L. Ed. 2d 797, 802 (1968); *State* v. *Dechene,* 114 R.I. 276, 280, 332 A.2d 125, 127 (1975).

In addition, it is clear that the initial stopping of defendant must be justified; otherwise, any subsequent evidence is inadmissible as "fruit of the poisonous tree." *United States* v. *McDaniel,* 550 F.2d 214 (5th Cir. 1977); *see Wong Sun* v. *United States,* 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963). Despite defendant's testimony that he was not speeding, the trial justice found Weaver's testimony more credible.[2] His finding of fact that defendant was speeding is not clearly erroneous. *Cf. State* v. *DeMasi,* 118 R.I. 494, 374 A.2d 806 (1977).

Having lawfully stopped defendant's vehicle, the police also had the right to approach the automobile and request to see his driver's license and registration. G.L. 1956 (1968 Reenactment) §§31-3-9, 31-10-27. *State* v. *Maloney,* 109 R.I. 166, 283 A.2d 34 (1971). Furthermore, the fact that Officer Ottilige walked to the passenger's side of the vehicle and may have glanced through the window did not constitute an invasion of defendant's privacy, particularly in view of the tip he had received earlier regarding a drug transaction involving a brown automobile. As we have stated in the past "[j]ustice should be blind, but law enforcement should not." *State* v. *Rattenni, supra* at 225, 366 A.2d at 542.

---

[2]Because of the trial justice's finding, we do not reach the question of whether this initial stop was justifiable under the brief investigative stop, or "intermediate response," theory which we have adopted in *State* v. Rattenni, 117 R.I. 221, 366 A.2d 539 (1976) and *State* v. *Wilson,* 110 R.I. 740, 297 A.2d 645 (1972).

312

Officer Ottilige, having had the right to be in the position to see into the car, had the right to seize whatever contraband he viewed. The plain view doctrine applies to articles which can be seen through the window of an automobile. *United States* v. *McDaniel, supra* at 218. Any evidence so discovered is not the product of a search. *State* v. *Bourg,* 332 So. 2d 235 (La. 1976).

The overriding issue in this appeal, however, is what Officer Ottilige in fact saw if and when he glanced through defendant's window. The evidence is uncontroverted that Ottilige first walked to the passenger's side of the vehicle, then came around to the driver's side and opened the rear door. This intrusion was not justified unless Ottilige saw the marijuana prior to opening the door. This is not a case where the car door was opened pursuant to a regulation requiring the search of an impounded vehicle, *see Harris* v. *United States, supra;* nor was the door opened for the officer's safety. *Johniken* v. *State,* 550 P.2d 979 (Okla. Crim. App. 1976). The defendant did not voluntarily open the door or give his consent to its being opened, *see State* v. *Rattenni, supra;* nor did the police have probable cause to search the vehicle under the automobile exception outlined in *Carroll* v. *United States,* 267 U.S. 132, 45 S. Ct. 280, 69 L. Ed. 543 (1925). On the record before us, we find that the state failed to meet its burden of proving that Ottilige in fact saw the marijuana prior to opening the door.[3]

The state argues that Officer Weaver testified at three different points during the suppression hearing that Officer Ottilige told Weaver he saw marijuana on the floor of defendant's vehicle and that the trial justice properly relied upon this hearsay to sustain a finding of probable cause and deny defendant's motion to suppress. In support of the admissibility of hearsay at preliminary hearings on evidentiary questions, the state cites *United States* v. *Matlock,* 415 U.S.

---

[3]There is no doubt from the record that Weaver did not see the marijuana until after the rear door had been opened and his attention had been directed to the package. Therefore, the marijuana was clearly not in the "plain view" of Weaver.

164, 94 S. Ct. 988, 39 L. Ed. 2d 242 (1974), wherein the Supreme Court upheld the use of hearsay in such hearings.[4]

The *Matlock* decision has never been applied in this state, and we decline to do so now on the facts of this case. From the evidence presented at the hearing, it is clear to us that there was insufficient testimony given by Officer Weaver, hearsay or not, to meet the state's burden of proving that Ottilige saw the marijuana prior to opening the rear door. Furthermore, contrary to the state's assertion, we fail to find any reference in the transcript to a statement made by Ottilige to Weaver that he had seen marijuana through a window in the automobile prior to opening the rear door.

Officer Weaver first testified to the following:

"Q  What happened then?
"A  As I was obtaining the license and registration from Mr. Marshall, he was getting it for me; Officer Ottilige walked around to left-hand side of the vehicle where I was and directed my attention to bags of marijuana —
"    * * *
"Q  Did you respond to his directing your attention?
"A  Yes.
"Q  What did you do in response to that?
"A  I looked at the objects that he had pointed out to me.
"Q  Where were these objects?
"A  Would have been on the floor of the vehicle.
"Q  Were you able to see them from where you were standing at that time?
"A  Yes."

When questioned by defense counsel, he explained this testimony as follows:

---

[4]The Federal Rules of Evidence now permit the introduction of hearsay at preliminary hearings on the admissibility of evidence. *See* Fed. R. Evid. 104(a); 1101(d)(1).

"Q  You're telling me from where you stood, you could look in that window of that station wagon, you could look down from your vantage point, you could see that.

"A  No, when Officer Ottilige directed this thing to me.

"Q  After Officer Ottilige directed it to you, what did you have to do?

"A  I stepped away from where I was standing right next to Mr. Marshall, walked over to the left rear door of the station wagon.

"Q  And peered in?

"A  No, which was — Officer Ottilige was now opening.

"Q  You saw this once he opened the door?

"A  He had seen it from the opposite side of the vehicle.

    "MR. HOULIHAN: I ask that be stricken, your Honor, not responsive, what Officer Ottilige saw.

    "THE COURT: He's already testified he was alerted to it.

    "MR. HOULIHAN: He can't testify to what Officer Ottilige said, I'd like it to be stricken.

    "THE COURT: It's all stricken, sure.

    "MR. HOULIHAN: As far as I recall, it's not in the record yet.

"Q  You didn't see that from standing outside the car, you saw it once the car was open?

"A  Not when I was talking to Mr. Marshall, I came over, Officer Ottilige was opening the door.

"Q  As he was opening the door, you saw it?

"A  Yes.

"Q  You didn't see it from outside the car, you saw it when the door was opened.

"A  Oh, yes, right.

"Q  You didn't testify to that."

Later, in response to a question from the trial justice, Officer Weaver testified:

> "Officer Ottilige had come over to this vehicle, said something to me like 'Look at this,' or observe this or something like that. I was standing by Marshall. I went back over here toward the rear of the vehicle, maybe even to the rear of the rear door. At that point, I looked in and he was opening the door. The door had been opened and I saw basically what you see right there."

Weaver's initial explanation of the events which transpired fails to make any reference to the undisputed fact that Ottilige had opened the rear door of defendant's automobile.

In response to questioning from defendant's counsel, Weaver admitted that Ottilige had opened the door. His testimony also included the statement that Ottilige "had seen it from the opposite side of the vehicle." Despite the hearsay objection, the record contains no indication of how Weaver came to this conclusion. A mere supposition on his part that Ottilige had seen something from the passenger's side of the vehicle is clearly insufficient to meet the state's burden of proof.

Furthermore, the statement itself fails to indicate what Ottilige saw. the state presented evidence indicating that there was a hole in the grocery bag through which marijuana was exposed to Weaver when he looked in the open door. Assuming *arguendo* that Ottilige looked into defendant's rear window, the state failed to prove that he saw this marijuana. If Ottilige saw only a grocery bag and, suspecting it to contain marijuana, opened the door to investigate, it is clear that the *Coolidge* requirement that the officer know the item in plain view to be contraband was not met. *Coolidge* v. *New Hampshire, supra* at 466, 91 S. Ct. at 2038, 29 L. Ed. 2d at 583.

Nor is the state aided by Weaver's subsequent statement in response to the questioning of the trial justice. A finding that Ottilige saw marijuana at the time he exclaimed "[l]ook at this" is speculative. In addition, this statement apparently was made after Ottilige had gone to the driver's side of the

vehicle; yet the trial justice found that he had seen the marijuana from the passenger's side window. Furthermore, the evidence again does not indicate clearly that Ottilige made his observation prior to opening the door.

It is apparent to us that the decision of the trial justice relied in large measure upon the stricken statement that Officer Ottilige "had seen it from the opposite side of the vehicle." As the decision was premised upon evidence not properly before the court, the decision is clearly erroneous. A factfinder may base a decision only upon evidence duly received and on reasonable inferences drawn therefrom. *Cf. State* v. *Welch*, 117 R.I. 107, 110, 363 A.2d 1356, 1358 (1976). The trial justice below received no evidence upon which he could have found that Officer Ottilige saw the marijuana in plain view prior to opening the door to the defendant's automobile.

The defendant's appeal is sustained, the judgment of conviction is vacated, and the case is remanded to the Superior Court.

*Julius C. Michaelson, Attorney General, Nancy Marks Rahmes, Special Assistant Attorney General,* for plaintiff.

*Corcoran, Peckham & Hayes, Kathleen Managhan, Joseph T. Houlihan,* for defendant.