MICHAEL MORETTI *vs.* DIVISION OF INTOXICATING BEVERAGES.
VINCENZO MORETTI *vs.* SAME.

MARCH 30, 1939.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CONDON, J.    These are petitions for writs of *certiorari* to the state division of intoxicating beverages, hereinafter referred to as the division. The writs issued. The petitioners are holders of class B licenses to sell intoxicating beverages on certain premises on Park avenue, in the city of Cranston, in the vicinity of the Cranston stadium and recreation field. On the recommendation of the police commission of Cranston each license was granted by the board of license commissioners of that city, hereinafter referred to as the board, over the objection of certain remonstrants.

These remonstrants duly filed with the division an application to review each decision of the board. The division, after a hearing, made an order which amounted to a revocation in part of each license. Each license, as granted by the board, was for a period of one year beginning December 1, 1938. The division ordered that each license should expire on March 31, 1939.

The ground of the division's decision in each case was the same. It held that it was contrary to the general welfare of the city of Cranston and to the welfare of the youth of that city to permit class B licenses for premises as close to the stadium as those of the petitioners. The evidence before the division showed that the stadium was used by school children in large numbers during a substantial portion of the year.

The petitioners contend that the division acted without jurisdiction, and under this contention they urge that, under sec. 14 of chapter 2013, public laws 1933 as amended by sec. 4, chapter 2088, public laws 1934, the remonstrants had no standing to appeal to the division.

Some question has been raised as to the appropriateness of *certiorari* to review these decisions of the division. It is admitted by the respondent that in a proper case *certiorari* will lie to review its action, but neither of these cases, it contends is a proper case. In our view of the record before us, they are proper cases for review by *certiorari,* as the questions raised by the contentions of the petitioners are questions of law.

Were the remonstrants here entitled to appeal to the division to review the decisions of the board? If they had such a right, it must be found in the statute. Bearing in mind that sec. 81 of the statute is a mandate to us to construe the statute liberally in aid of its declared purpose to promote temperance and to control the traffic in alcoholic beverages, we have carefully examined it section by section to find some language which was broad enough to warrant us in holding that these remonstrants were authorized to appeal from the decisions of the board. We have found that the legislature has not made it at all clear just who are entitled to appeal. Sections 14, 20 and 21 are the only sections which seem to throw any light on the question.

Section 14 as amended by chap. 2088, sec. 4, provides: "Upon the application of any petitioner for a license, or of

any person *hereby* authorized to *protest* against the granting of a license, or upon the application of any licensee whose license shall be revoked by any local board or authority, the commission shall have the right to review the decision of any local board and after hearing to confirm or reverse the same in whole or in part, and to make such decision or order as to it shall seem proper, but such application shall be made within ten days after the making of the decision or order sought to be reviewed; and notice of said decision or order shall be given by said local or licensing board to the applicant within twenty-four hours after the making of its decision or order; and such decision or order shall not be suspended except by the order of the commission." (italics ours)

Two classes of persons appear to be authorized to appeal by this section: (1) Any petitioner for a license and any licensee whose license shall be revoked by any local board; (2) any person who is authorized by the chapter to *protest* against the granting of a license. The first class is definitely identified but the second class is not. Those who qualify for inclusion in that class must be determined from the language appearing in sec. 21 of the chapter.

Section 21 as amended by sec. 5½ of chap. 2088, provides that retailers class B licenses shall not be issued where the owners of the greater part of the land within two hundred feet of the proposed licensed premises object to such license, nor for any building or place within two hundred feet measured by any public way of the premises of any public or parochial school or of a place of public worship.

By virtue of the first clause of this section, an owner of land within two hundred feet of the proposed licensed premises is necessarily a person authorized to protest against the granting of a license. Under the second clause, any person who objects to the local board on the ground that the proposed licensed premises are within two hundred feet of a school or a church is also authorized by the statute to protest against the granting of a license. Any person who

qualifies under either of these clauses is therefore entitled to appeal under sec. 14.

Do the remonstrants here qualify under either clause? It does not appear from the record that any of them are the owners of land within two hundred feet of either licensee's premises, and so they do not qualify under the first clause. Nor does it appear that they objected to the granting of either of these licenses on the ground that the licensed premises were within two hundred feet of a school or of a church, or even within that distance of the stadium. Indeed, the record shows that each licensee's premises are situated more than two hundred feet from the stadium. Hence these remonstrants do not qualify under the second clause.

But it is argued that the language of sec. 20 necessarily implies that remonstrants who appear at the hearing before the local board and who, for any reason, object to the granting of a license shall have the standing of persons authorized to protest. If we accept this contention there is practically no restriction on the right to appeal, as anyone, in response to the advertised notice of the hearing on applications for license, may remonstrate. We do not think that the language in sec. 20 shows that the legislature intended that all persons who had the right *to be heard* before the local board as remonstrants must therefore be deemed to be persons referred to in sec. 14 as authorized to *protest* against the granting of a license.

To adopt the construction of sec. 20 urged by the respondent would make useless the legislature's careful limitation of the right of appeal as set out in sec. 14. There would appear to be no reason for attempting to prescribe in that section the qualifications necessary to authorize one to appeal, if all persons who have the right to remonstrate to the board against the granting of a license may be heard to appeal, as there are no restrictions in the statute on the right to remonstrate. In construing the language which the legislature has employed, we are bound to avoid such an

absurd result if possible. Obviously there is ambiguity in the language which the legislature has used to express its intention, and that ambiguity must be resolved in favor of a construction that would be reasonable.

It may be argued that on such occasions as the instant cases present, residents of the community who have a civic interest, as well as those having an individual property interest, in the granting of a license in a particular neighborhood, should be allowed to protest against the granting of such license and have the right to appeal. If the matter is called to the attention of the legislature it may be persuaded to make the necessary amendment to the statute to provide such a right. But we have no authority to anticipate such possible action and, by construction of the statute as it now stands, find such a right of protest where none is clearly given expressly or by necessary implication. It is our duty to construe the statute, not to redraft it.

Recently, in *Baginski* v. *Alcoholic Beverage Commission,* 62 R. I. 176, 4 A 2d. 265, we held that the commission, on an appeal properly before it, had the right to hear the entire matter *de novo* and to make such decision as to it seemed proper, subject only to correction on *certiorari* by this court for error of law. This, we conceded, made the commission, on cases properly appealed to it, a super-licensing board. If we were now to hold by a strained construction that any one who has a right to remonstrate against the granting of a license by the local board was, by the statute, authorized to appeal to the commission—now the division—the local board would be left with little if any authority over the granting of licenses. The practical effect of such a construction would be to strip the local board of the discretion which is granted to it by the statute and to transfer it to the state division. We are convinced that the legislature did not intend to go so far; at least we are unable to find such an intention in the language which it used.

Counsel for the remonstrants urged upon us reasons of

policy in support of the division's decisions. While we are in sympathy with much of his argument on this score, yet we must say that such reasons of policy are not properly addressed to us. After all, the remonstrances in these cases raise a peculiarly local problem which the electors of the city of Cranston, through their chosen representatives, are best able to solve. In this instance, the local board consists of the mayor and the city council directly chosen by the people. If any public body can be relied upon to respond to the wishes of the electors, who are the ultimate judges of matters of public welfare in Cranston of the character raised here, it is the mayor and the city council. But if the legislature desires that the power to decide such matters be lodged elsewhere, it can make its desire known in unmistakable terms, and it will prevail. In the present state of the law, however, we must hold that these remonstrants are not authorized to protest the granting of these licenses and, therefore, are not authorized to appeal.

Since the remonstrants were not authorized to appeal, the division should have dismissed their applications to review the decisions of the board. In considering the applications and thereafter reversing in part the decisions of the board, the division acted without jurisdiction.

It is therefore ordered that the record of its proceedings with reference to these appeals from the decisions of the board granting licenses to these petitioners, be quashed.

Moss, J., dissenting. I am unable to agree with my associates in the interpretation of the statute in question in its amended form. As quoted in the opinion of the court, the important part of sec. 14 is as follows: "Upon the application of any petitioner for a license, or of *any person hereby authorized to protest against the granting of a license* . . . the commission shall have the right to review the decision of any local board . . . ."

The question, then, is what is meant by the words which I have italicized in the above quotation. There are just two

parts of the statute to which they might refer. One of these is sec. 20 as amended, which reads as follows: "Before granting a license to any person under the provisions of this act the board, body or official to whom application for the same shall be made, shall give notice by advertisement published once a week for at least two weeks in some newspaper published in the city or town where the applicant proposes to carry on business or if there be no newspaper published in a town, then in some newspaper having a general circulation in such city or town; *provided,* that application for retailers' class F and class G licenses need not be advertised. The advertisement so published shall contain the name of the applicant and a description by street and number or other plain designation of the particular location for which the license is requested. Said notice shall state that *remonstrants* are entitled to be heard before the granting of such license, and shall name the time and place of such hearing. At such time and place a fair opportunity shall be granted the *remonstrants* to make their *objections* before acting upon said application." (italics mine)

The other part of the statute to which the words above quoted from sec. 14 might refer is the following from sec. 21 as amended: "Retailers class B and class C licenses under this act shall not be issued to authorize the sale of beverages in any building or place where the owners of the greater part of the land within two hundred feet of such building or place shall file with the body or official having jurisdiction to grant licenses their *objection* to the granting of such license . . . ." (italics mine)

It should be noticed that nowhere in the statute is anyone *expressly* "authorized" to "protest" against the granting of a license; but all the members of the court agree that such authority may be inferred from any language which recognizes a right to protest and that it is recognized in the language above quoted from sec. 21. As to this point the only issue on which there is not a complete agreement is whether

such a right to protest is recognized in the language above quoted from sec. 20.

It is noteworthy that neither the word "protest" nor any form or derivative of it appears in either of these sections, and that this word is given in Webster's New International Dictionary and at least in some of the other standard dictionaries as one of the synonyms of "remonstrate". So far as the meanings of the three words are concerned, I can see no reason why it is not as probable that the word "protest" in sec. 14 refers to the word "remonstrants" in sec. 20, as that it refers to the word "objection" in sec. 21.

The majority of the court have found that the reference is exclusively to the word "objection" in sec. 21. But the word "objections" is found in sec. 20 and is there used as referring to objections made by *"remonstrants"*. Therefore, it seems clear to me that the findings of the majority of the court cannot properly be based at all on the phraseology of the three sections in question and must be justified, if at all, on much broader considerations.

But in my judgment the broader considerations are strongly against this finding rather than in favor of it. By the last part of sec. 21, immediately following the part above quoted, it is provided that no class B or class C license shall be issued to authorize the sale of beverages (*i. e.*, alcoholic beverages) "in any building or place within two hundred feet measured by any public way of the premises of any public or parochial school or of a place of public worship."

If the word "protest" in sec. 14 be interpreted as referring only to the word "objection" in sec. 21, then in my judgment it clearly follows that an appeal to the division of intoxicating beverages from a decision of a local board granting a class B or class C license cannot be taken by *anybody* on the ground that the building or place in which such beverages are to be sold under such license is within two hundred feet, measured by any public way, from a public or parochial school or a place of public worship, unless such an appeal,

based on that ground, can be taken by an owner of land within two hundred feet of such building or place, which to me is doubtful, since that ground and his ownership of such land have no relevancy to each other.

But even if it can be taken by such an owner, I can see no justification for unnecessarily so construing this statute that an owner of such land can, on this ground of proximity to a school or church, protest against the granting of a license, and can take an appeal, if the license is granted notwithstanding his protest, and yet none of the residents of the city or town who attend at such church or whose children attend such school can protest or take such an appeal.

It is true that in the opinion of the majority of the court it is stated that "any person who objects to the local board that the proposed licensed premises are within two hundred feet of a school or a church is also authorized by the statute to protest against the granting of a license." But I cannot see how that statement can be reconciled with the view of the majority that under sec. 14 only persons expressly authorized by the statute to protest can appeal and that the only persons who are thus authorized to protest are those who by sec. 21 are authorized to file their objections to the granting of a license.

Moreover, it is, to my mind, much more reasonable to hold that any persons whose rights to remonstrate by presenting objections against the granting of a certain license are recognized by sec. 20 and who have thus remonstrated to the local board on any relevant ground, including this particular ground of the proximity of the place, where liquor is to be sold under the license, to a school or church, may appeal from an adverse decision by the local board. Besides this particular ground, it seems to me that there are other grounds of objection which are at least equally serious, in the interest of temperance and the proper control of the traffic in alcoholic beverages.

Such a holding would obviate any necessity of giving a strained construction to the language of secs. 14 and 21 in order to enable anyone having an interest in preventing the selling of intoxicating beverages within two hundred feet of a school or church to object to the granting of a license for such selling.

It would also prevent what seems to me a very regrettable result which will follow from the decision of the court in these cases. That result will be that an owner of property within two hundred feet of the location for which a license is sought, though he may not be a resident of the town or city and may have no interest whatever, on grounds of morals, health, or the effect on young people or of common decency, in opposing the granting of a license, will have a right to protest against the granting of the license. He will also, if it is granted, have a right to take an appeal to the state division from the decision of the local board. But a citizen of the town or city, who, with a wife and their family of adolescent children, resides near the location where liquor would be sold under the license, if granted, and who has conclusive evidence that the applicant is a man who cannot be trusted to act under the license in a decent manner, will not be able to take an appeal to the state division if the local board ignores his remonstrances and his objections and his evidence and grants the petition for a license.

In my judgment such a result should be avoided, by any interpretation of the statute that is reasonable in view of the following provision in sec. 81 of the statute: "This act shall be construed liberally in aid of its declared purpose which declared purpose is the promotion of temperance and for the reasonable control of the traffic in alcoholic beverages." In my judgment there is such an interpretation which is clearly reasonable, especially in view of the provision just quoted, and which will avoid the above result and produce a result that will accomplish the above-declared purpose.

It is provided in sec. 14, as amended, that the state division, upon the application "of any person hereby authorized to protest against the granting of a license", shall have the right to review the decision of any local board granting such license. It is provided in sec. 20 that before granting any such license as is involved in each of these cases, the local board shall give notice of the application for such license by publishing notice thereof in a newspaper published in the city or town, or if there is no such newspaper, then in one having general circulation therein. It is there provided also that such notice shall state that remonstrants are entitled to be heard before the granting of the licenses and shall state the time and place of the hearing. It is then provided in the section that at such time and place "a fair opportunity shall be granted the remonstrants to make their objections" before the application is acted upon.

In view of the fact that the notice is required to be given in a newspaper that has at least a general circulation in the city or town, it seems to me that the implication is clear that any citizen and resident of the city or town would have the right to remonstrate. It also seems to me that the section should be construed as requiring each remonstrance to be based on an objection or objections with which the remonstrant is concerned, and should be given the same effect, in connection with sec. 14, as if in sec. 20 the words "persons wishing to protest" were substituted for the word "remonstrants", and the words "grounds for protests" were substituted for the word "objections".

The result of this interpretation would be that by sec. 14 any citizen and resident of the city or town who had remonstrated or protested to the local board against the granting of a petition for such a license as those involved in the instant cases, and had stated his objections to the granting of such petition, and had thus made himself a party to the proceedings, would be entitled to take an appeal to the state division from a decision of the local board granting

the petition; and the division would then have the right to review the decision.

In the instant cases these conditions were satisfied by the remonstrants who applied to the division for a review of the decisions of the local board; and therefore it is my opinion that the division had a right to review such decisions. It is my opinion also that, upon the evidence before the division, it was justified in its decisions, reversing the decisions of the local board and ordering that the licenses should expire on March 31, 1939.

*Sisson & Fletcher,* for petitioners.

*Hoyt W. Lark, Hart, Gainer & Carr, William G. Troy,* for respondents and remonstrants.