385 A.2d 669.

CITY OF WARKICK *v.* HENRY W. ROBALEWSKI.

APRIL 28, 1978.

PRESENT: Bevilacqua, C.J., Paolino, Joslin, Kelleher and Doris, JJ.

120

PAOLINO, J.   On April 22, 1976, the petitioner, Henry W. Robalewski, then just short of his eighteenth birthday, was found to be a delinquent and wayward child by a judge of the Rhode Island Family Court. Sentencing was deferred until May 6, pending a report form the probation officer and at that time Henry was committed to the Rhode Island Training School for Boys for a period of 6 months with 3 of them suspended. Henry thereupon filed in the Family Court a notice of appeal and a motion for release pending appeal. The motion was denied, but was renewed in this court, ostensibly under authority of our Rule 9 providing for release in criminal cases pending appeal. We treated the motion as a petition for a writ of habeas corpus, in accord with the provision of G.L. 1956 (1969 Reenactment) §14-1-53, and granted the petition on June 10, 1976[1]

---

[1]General Laws 1956 (1969 Reenactment) §14-1-53 reads as follows:

"Effect of pendency of appeal. — The pendency of an appeal in the case of a child, shall not suspend the order or decree of the family court, nor shall it discharge the child from the custody of said court or of the person, institutions

In granting the petition we ordered that Henry's commitment be stayed pending determination of his appeal, and we directed counsel to brief the question of whether a juvenile has a right to bail pending appeal — an issue presented here and in a companion case which we also decide today. *In re Alfred*, 120 R.I. 127, 385 A.2d 673 (1978).

Since Henry is no longer in custody, we shall now treat his petition as an appeal from the Family Court's denial of his request for bail.

The offense which led to Henry's adjudication as a delinquent child was the alleged possession of stolen goods. A stolen camera was found in his room by officers of the Warwick Police Department in the course of a search for stolen goods, and it is the seizure of this camera by the police that Henry is challenging on appeal. Henry claims to have bought the camera from one Francis Andrews — a man who was known to the police and who had left the state and could not be located at the time of trial — and Henry subsequently produced a "bill of sale" as evidence of the sale. At a hearing before a justice of the Family Court on April 22, 1976, the signature on the alleged bill of sale was compared by the court with Andrews' signature on both a bail bond and a fingerprint card and were found to be strikingly dissimilar. The judge stated that he found Henry to be guilty of the possession of stolen goods beyond a reasonable doubt and ordered him committed to the Rhode Island Training School for Boys.

This was not Henry's first appearance in the Family court. He was first referred at the age of 10 on a charge of breaking and entering and had appeared in court on numerous subsequent occasions, but, insofar as the record indicates, this appears to have been the first time that he was ordered removed from the custody of his mother and step-father and

---

or agency to whose care such child shall have been committed unless by writ of habeas corpus unless and until the supreme court or any justice thereof shall so order."

sent to the Training School. It is that action by the Family Court which brings him before us on appeal and on petition for the writ of habeas corpus.

We consider first the question which we directed counsel to brief: Does a juvenile have a right to postadjudication bail pending appeal?

Ours is a negative reponse because no one, adult or infant, has a constitutional right to postconviction or, if you will, postadjudication bail.

The right to bail is not within the safeguards of the United States Constitution for the simple reason that the only reference to bail in the Federal Constitution is to be found in the eighth amendment. The sole mandate of the eighth amendment is an order that, if bail is to be set, it shall not be excessive. Bail in the federal system is statutory in origin:

> "From the passage of the Judiciary Act of 1789, 1 Stat. 73, 91, to the present Federal Rules of Criminal Procedure, Rule 46 (a)(1), federal law has unequivocally provided that a person arrested for a non-capital offense *shall* be admitted to bail." *Stack* v. *Boyle,* 342 U.S. 1, 4, 72 S. Ct. 1, 3, 96 L. Ed. 3, 6 (1951),

and the eighth amendment directs only that *if* bail is accorded it shall not be excessive.

Rhode Island's Constitution also contains a prohibition against excessive bail. R.I. Const. art. I, §8. However, article I then goes on to make bail a matter of right when in §9 it says:

> "All persons imprisoned ought to be bailed by sufficient surety, unless for offenses punishable by death or by imprisonment for life, when the proof of guilt is evident or the presumption great."

In *Quattrocci* v. *Langlois,* 100 R.I. 741, 744, 219 A.2d 570, 572 (1966), we pointed out that this constitutional guarantee is applicable solely to pretrial bail and that it "does

not confer a right to bail pending appeal from a conviction." Postconviction bail, we said, is a matter which is directed to the trial justice's discretion. *Id.* at 747, 219 A.2d at 574.

Thus, neither the federal nor the state constitution mandates postconviction release on bail pending appeal.

Rule 46 of the Superior Court and the District Court Rules of Criminal Procedure declare that a defendant "may be admitted to bail after conviction pending appeal." In *State* v. *Abbott,* 113 R.I. 430, 322 A.2d 33 (1974), we referred to some of the factors that should be evaluated when postconviction bail is being sought. They are (1) the substantiality of the grounds of appeal, (2) the potentiality of release posing a threat to the community, (3) the petitioner's ties to the community, and (4) other circumstances, such as the severity of the sentence which might indicate there is a risk that the petitoner might flee the jurisdiction. *Id.* at 432, 322 A.2d at 35.

The General Assembly by its enactment of §14-1-53 has fashioned a device which provides for postadjudicatory release by way of habeas corpus to this court. While this statute affords the juvenile with something which is similar to postconviction bail, the Legislature has given us a task for which we are ill equipped. Petitions for release under §14-1-53 usually require the consideraton of certain factual issues. Such determinations can best be done, and in all other comparable situations are done, in a trial court. We see no reason why the Family Court should not be permitted to exercise the same discretion that is being exercised in the other trial courts pursuant to their respective Rule 46. The criteria to which we alluded in *State* v. *Abbott* may be just as relevant in deciding the advisability of postadjudicatory release of a "wayward or delinquent" juvenile as when postconviction bail release is being sought by an adult. The Family court might well invoke the *Abbott* standards as it seeks to strike a proper balance between the juvenile's welfare and the public safety.

While we recognize that the court's function is to apply and give effect to the law as enacted by the Legislature, *Westminster Corporation* v. *Zoning Board of Review*, 103 R.I. 381, 401, 238 A.2d 353, 364 (1968)(Joslin, J., dissenting), we suggest, with regard to a juvenile's right to bail, as we did in another context on an earlier occasion, that "[i]f the matter is called to the attention of the legislature it may be persuaded to make the necessary amendment to the statute to provide such a right." *Moretti* v. *Division of Intoxicating Beverages*, 62 R.I. 281, 286, 5 A.2d 288, 290 (1939).

Having decided that a juvenile does not have a right to bail pending appeal, we now turn to a consideration of the search and seizure issue raised in petitioner's appeal itself.

As mentioned, Henry was found wayward and delinquent for possession of a camera stolen in a housebreak. The camera was admitted into evidence over Henry's objection. It was found in Henry's bedroom by two police detectives who were investigating another housebreak. Detective William Morgan testified that he and the other investigating detective were given permission to enter the bedroom by Henry's stepfather, the owner of the house. Detective Morgan stated that before entering the house he informed the stepfather of his constitutional rights and that the stepfather signed a waiver of rights and consent to search form.[2]

The detectives spotted the camera on the floor of the bedroom. Detective Morgan picked it up, opened the case, saw a name other than Henry's inside, and took the camera believing that it might have been stolen. The police later found that the camera had in fact been stolen.

Contrary to what the city of Warwick's brief suggests, the seizure of this camera took place when the detectives picked up the camera and opened it, *see United States* v. *Boswell*, 347 A.2d 270, 273 (D.C. 1975); *United States* v. *Gray*, 484

[2]The petitioner, who was a minor at that time, has not raised any question concerning the validity of his stepfather's giving consent to search his bedroom.

F.2d 352, 356 (6th Cir. 1973), *cert. denied*, 414 U.S. 1158, 94 S. Ct. 916, 39 L. Ed. 2d 110 (1974); *Commonwealth* v. *Bowers*, 217 Pa. Super. Ct. 317, 274 A.2d 546 (1970), not when they decided to take it from the house. Thus, the issue here is whether picking up and opening the camera was constitutionally permissible even though the police did not have a warrant.

The city of Warwick contends that the camera was seized with the consent of Henry's stepfather. At trial, however, Detective Morgan indicated that when he talked with the stepfather and obtained that consent, he mentioned only that he was searching for a stuffed squirrel along with other unspecified goods stolen in a specific housebreak, not the one in which the camera was taken.

Defense counsel, in objecting to the admission of the camera as evidence, argued that the consent given was limited to the items described in that conversation, so that the seizure of the camera was outside of the scope of that consent. The trial justice overruled this objection saying that "[s]ince there was no search warrant it was general permission apparently given to the officer to search the house."

The case law indicates, however, that consent to search is not necessarily blanket. As one federal appeals court stated:

> "A defendant's consent may limit the extent or scope of a warrantless search in the same way that the specifications of a warrant limit a search pursuant to that warrant. Both limit the officers' activity by stipulating the areas into which they may look. Both may limit a search to certain areas or even to certain specified items within an area. *United States* v. *Dichiarinte*, 445 F.2d 126, 129-30, n.3 (7th Cir. 1971);

*cf. Mason* v. *Pulliam*, 557 F.2d 426, 429 (5th Cir. 1977)(where basis for search or seizure is consent, government must conform to limitations placed on consent and must cease when person revokes that consent). Furthermore, a consent search is reasonable only if kept within the bounds

of the actual consent. *United States* v. *Griffin,* 530 F.2d 739, 744 (7th Cir. 1976), citing *United States* v. *Dichiarinte.*

Because the trial justice was of the opinion that a consent search was necessarily general, he made no findings as to the extent of the consent actually given. We must therefore remand this case for a determination of whether the seizing of this camera was within the scope of the consent given by Henry's stepfather.

If the court on remand finds that seizing the camera was not within that consent, however, it might still conclude that the seizure was lawful under some other exception to the search warrant requirement. In this case the city of Warwick argues that since the detectives were in Henry's bedroom with his stepfather's consent and since the camera was in open view on the floor, it was lawfully seized under the "plain view" exception. Under that exception, " 'objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced into evidence.' " *Bretti* v. *Wainwright,* 439 F.2d 1042, 1046 (5th Cir. 1971); *accord, State* v. *Joseph,* 114 R.I. 596, 604, 337 A.2d 523, 528 (1975).

As we said in *State* v. *Joseph,* however, "[t]he plain-view exception does not dispense with the necessity for probable cause to justify the seizure, it merely allows the seizure without the necessity of a previously obtained warrant." *Id.* at 604, 337 A.2d at 528; *accord, United States* v. *Truitt,* 521 F.2d 1174, 1176 (6th Cir. 1975). Thus, for the seizure of the camera to be lawful under plain view, Detective Morgan needed to have probable cause to believe it was stolen before he picked it up and opened the case, *United States* v. *Gray,* 484 F.2d at 355-56; *cf. Stanley* v. *Georgia,* 394 U.S. 557, 571-72, 89 S. Ct. 1243, 1251-52, 22 L. Ed. 2d 542, 553 (1969)(Stewart, J., concurring)(unconstitutional to seize obscene films discovered during warrant search for unrelated items where contents of the films could not be determined until after viewing them); *United States* v. *Sokolow,* 450

F.2d 324 (5th Cir. 1971) (unconstitutional to enter open garage and copy serial numbers of air conditioners with only suspicion that they were stolen), and facts indicating that probable cause existed must appear on the record. *Commonwealth* v. *Wojik,* 358 Mass. 623, 631, 266 N.E.2d 645, 650 (1971).

The record in this case is barren of any facts showing that the detectives had the requisite probable cause before they picked up the camera. In fact, Detective Morgan himself testified that it was after he opened the case that he suspected the camera was stolen. Because of the disposition of this case at trial, however, we have no findings of fact by the trial justice on this issue either. On remand, therefore, if the trial justice finds that the seizure was outside of the bounds of the consent given by Henry's stepfather, he should then determine whether the seizure was lawful under plain view or under some other exception to the search warrant requirement.

The petitioner's appeal is sustained, the judgment appealed from is reversed, and the case is remanded to the Family Court for further proceedings.

*Julius C. Michaelson,* Attorney General, *Alfred French Goldstein, Nancy Marks Rahmes,* Special Assistant Attorneys General, for plaintiff-respondent.

*William F. Reilly,* Public Defender, *Barbara Hurst,* Chief Appellate Attorney, for defendant-petitioner.