STATE

v.

Joseph N. ROBALEWSKI.

No. 79–20–C.A.

Supreme Court of Rhode Island.

July 28, 1980.

Dennis J. Roberts, II, Atty. Gen., John E. Migliaccio, Asst. Atty. Gen., for plaintiff.

Peter B. Olsen, Asst. Public Defender, for defendant.

## OPINION

BEVILACQUA, Chief Justice.

This is an appeal by the defendant, Joseph N. Robalewski, from the judgments of conviction entered after a jury trial in the Superior Court. The jury returned guilty verdicts on six felony counts under indictment No. 76–640:[1] count 1, escape while a prisoner confined to the maximum custodial unit of the Adult Correctional Institutions (ACI), in violation of G.L.1956 (1969 Reenactment) § 11–25–2; count 3, robbery, in violation of § 11–39–1; count 4, possession of a firearm, a pistol, after having been convicted of a crime of violence, in violation of § 11–47–5; count 5, committing a crime of violence, robbery, while armed with a firearm, a pistol, in violation of § 11–47–3; count 6, carrying a pistol on his person without a license, in violation of § 11–47–8,

as amended by P.L.1975, ch. 278, § 1; count 7, assaulting a correctional officer while a prisoner in the maximum custodial unit at the ACI, in violation of § 11–25–2. Count 2 of said indictment, charging the defendant with assault with a dangerous weapon, a pistol, in violation of § 11–5–2, was dismissed prior to trial pursuant to Rule 48(a) of the Superior Court Rules of Criminal Procedure.

On March 20, 1976, defendant was an inmate of the ACI in maximum security custody at the Institute of Mental Health (IMH). At about 4 p. m., correctional officer Darryl Superczynski arrived at the IMH to guard defendant. Mr. Superczynski, after having been given a loaded revolver by the officer he replaced, took up his post opposite defendant's room. At the time, defendant had a visitor, Ann Marie Martin (Ann Marie). At approximately 4:15 p. m., defendant was served his meal. The defendant apparently was not satisfied with the meal because he asked Mr. Superczynski if Ann Marie could use the officer's car to purchase some different food for him at a local delicatessen. Mr. Superczynski consented, and thereafter Ann Marie went out and returned with a brown paper bag filled with food wrapped in aluminum foil. Under Mr. Superczynski's observation these items were taken out of the bag. At about the same time, Ann Marie returned to Mr. Superczynski his car keys.

Around 7:30 p. m., defendant asked Mr. Superczynski if he would like something to eat. In response Mr. Superczynski left his chair and stepped into the doorway of defendant's room. Mr. Superczynski, however, eventually declined the offer, whereupon he turned to leave the room. As he did so, defendant grabbed him by the neck and, while holding a pointed metallic object to his throat, threatened to kill him if he offered any resistance. The defendant then took the officer's gun and threw him into a chair. As defendant began changing into

---

1. Each count of indictment No. 76–640 related to the conduct of defendant Joseph N. Roba- lewski on March 20, 1976.

street clothes, Mr. Superczynski attempted to move toward him. The defendant struck the officer on the head with the gun, and Mr. Superczynski slumped back in the chair. The defendant subsequently punched Mr. Superczynski in the right eye. Once dressed and armed with the guard's gun, defendant threatened Mr. Superczynski and obtained from him his car keys and his handcuffs. Before leaving, defendant handcuffed Mr. Superczynski to a part of the washbasin in the room. Ann Marie accompanied defendant in his flight from the IMH.

On May 22, 1976, Detective John J. O'Neil of the Rhode Island State Police, together with numerous other state and local police officers, entered an apartment located in the city of Warwick, intending to arrest defendant. The officers had split into two groups, planning to enter simultaneously through both the front and rear entrances of the apartment. One of the officers who had entered the apartment through the front door immediately recognized defendant sitting alone at a table in the kitchen area of the apartment. The officer walked directly over to defendant and placed him under arrest. At about the same time, the officers assigned to enter through the rear door made their appearance.

There were several adults (apparently the owners or tenants of the apartment) and children present during defendant's arrest. At the time of the arrest, at least seven officers were present in the apartment. After defendant was under arrest, Detective O'Neil asked the other persons where defendant had been staying. In response, one of the children identified a jacket lying on a living-room couch as belonging to defendant. Detective O'Neil walked over to the couch and, upon examining the jacket, found a revolver in one of its pockets. The revolver was introduced at defendant's trial.

The defendant in this appeal challenges (1) the adequacy of the trial justice's charge

defining the elements of robbery, (2) the admissibility of evidence seized without a warrant, and (3) the validity of his multiple convictions.

## I

We shall address initially defendant's contention that the trial justice's charge on the elements that the state had to prove to establish the crime of robbery was inadequate. The defendant contends that an essential element of the crime of robbery is the specific intent to deprive another of his property permanently, and he submits that the trial justice erred in not including this element in the instructions.[2] Moreover, defendant urges that the charge actually given by the trial justice was erroneous because it defined the term "feloniously" as merely "criminally or illegally."

The state concedes that the trial justice did not instruct the jury on the element of specific intent to deprive another of his property permanently. However, the state argues that the definition was sufficiently adequate to inform the jury that the taking must have been done with such an intent.

■■■ Of course, the state must prove beyond a reasonable doubt each element necessary to constitute the crime charged. *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368, 375 (1970); *In re John Doe*, R.I., 390 A.2d 920, 924–25 (1978). Accordingly, before jurors can pass upon each element of an offense charged, the trial justice must give them a proper and clear statement of each element that the state must prove. If a trial justice neglects to instruct a jury on every element of the offense, he commits plain error. *Jackson v. United States*, 348 F.2d 772, 773–74 (D.C. Cir.1965); *see State v. Russo*, 113 R.I. 248, 254, 319 A.2d 655, 658 (1974); G.L.1956 (1969 Reenactment) § 8–2–38.

■■■ In Rhode Island we have accepted the common-law definition of robbery. *State v. Domanski*, 57 R.I. 500, 190 A. 854

---

2. The defendant first raised this objection after the trial justice had completed his charge to the jury and had requested that the parties specify

any objections that they might have to his instructions.

(1937). In *State v. Reposa*, 99 R.I. 147, 206 A.2d 213 (1965), this court held that robbery "consists of the 'felonious and forcible taking from the person of another of goods or money to any value by violence or putting him in fear.' 4 Black.Comm. 241. The taking, just as in larceny, must be *animo furandi, Rex v. Hall*, 3 Car. & P. 409, *Rex v. Donnally*, 1 Leach 193, 195, and 'The felonious quality consists in the *intention* of the prisoner to defraud the owner and to apply the thing stolen to his own use * * *.' 4 Black.Comm. 232 n.6. In other words, for a taking to be felonious, there must be a specific intention to deprive another wholly and permanently of his property * * *." (emphasis in original) *Id.* at 149, 206 A.2d at 215.

Thus, under our definition an essential element of the crime of robbery is the specific intention to deprive another wholly and permanently of his property. *See also State v. McGehearty*, R.I., 394 A.2d 1348, 1351 (1978).

The trial justice in the instant case instructed the jury with respect to count 3 and count 5 (the robbery counts) that

"[f]eloniously, ladies and gentlemen, means criminally or illegally. There are four elements to the crime of robbery, each of which the State must prove beyond a reasonable doubt. The State must prove (1) the felonious taking of money or goods (2) from the person of another or in his presence (3) against his will (4) by violence or by putting him in fear. The State must prove each of these elements beyond a reasonable doubt. If the State does prove all four elements beyond a reasonable doubt your obligation is to return a verdict of guilty. If the State has failed to prove any one or more of these elements, your verdict on this robbery count must be not guilty."

In passing on the sufficiency of a trial justice's instruction, we determine how a jury composed of ordinarily intelligent lay persons listening to it at the close of trial would have appreciated the instructions as a whole. We assume that the actual jurors in the case before us would have similarly understood the charge. *State v. Carillo*, 113 R.I. 32, 41, 317 A.2d 449, 455 (1974); *State v. Reid*, 101 R.I. 363, 366, 223 A.2d 444, 446 (1966).

After examining the trial justice's instructions on the robbery counts, we conclude that the ordinary jury would not have comprehended that an essential element of the crime of robbery is the intent to deprive another wholly and permanently of his property. Moreover, we find no merit in the state's contention that, for all practical purposes, the evidence presented at trial could lead only to the conclusion that defendant possessed the requisite intent to rob. In light of the trial justice's failure to recite proper instructions on an essential element of the offense, we cannot be satisfied that the jury considered this element before returning the verdict. We must therefore conclude that the charge was erroneous and that this error constitutes reversible error requiring a new trial of count 3 (robbery) and count 5 (committing a crime of violence, robbery, while armed with a pistol).

## II

The defendant next contends that the revolver admitted in evidence against him was obtained in contravention of his right under U.S.Const. amend. IV and R.I. Const. art. I, sec. 6 to be free from unreasonable searches and seizures and, therefore, should have been excluded.

A mid-trial *voir dire* was held on defendant's motion to suppress the gun that Detective O'Neil found in the pocket of defendant's jacket. After the *voir dire* hearing, the trial justice found that the search was "reasonable and precautious" and denied defendant's motion.

The defendant challenges the trial justice's ruling, asserting that the search was not conducted pursuant to a warrant issued on probable cause and that the state did not prove that the search was reasonable under an exception to the warrant requirement as incident to a lawful arrest or as conducted under exigent circumstances.

The state, in turn, argues that the seizure of the revolver was a reasonable incident to a lawful arrest, and in the alternative, the state contends that the seizure of the pistol was reasonable under the plain-view doctrine. Finally the state claims that even if we find that the trial justice erred in admitting the revolver, we should find such error harmless and therefore not reversible error.

The record shows that Detective O'Neil testified that when the group of police entered through the front door of the apartment, one of the officers immediately espied defendant seated alone at the kitchen table. The officer strode across the living-room area and placed defendant under arrest where he sat. Simultaneously, three or four more officers entered the apartment by a back door. Detective O'Neil then asked where defendant had been staying. A child responded by pointing to the jacket. Detective O'Neil walked over to the couch and picked up the jacket. As he picked up the jacket, Detective O'Neil felt something heavy inside. He then observed an object, which he recognized as the butt plate of a revolver, sticking out of one of the jacket's side pockets. After removing the loaded revolver, Detective O'Neil placed the jacket back on the couch.

▮ It is well established that the state bears the burden of proving that the warrantless search was reasonable under one of the delineated exceptions to the warrant requirement. *Bumper v. North Carolina*, 391 U.S. 543, 548, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 797, 802 (1968); *State v. Marshall*, R.I., 387 A.2d 1046, 1048 (1978).

In *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), the United States Supreme Court decided that a search incident to arrest is reasonable under the Fourth Amendment when limited to an arrestee's person and the area within his immediate control. In its decision the Court defined the permissible scope of a warrantless search incident to arrest as follows:

"When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. * * * In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. * * * There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." *Id.* at 762–63, 89 S.Ct. at 2040, 23 L.Ed.2d at 694.

In denying the motion to suppress, the trial justice concluded, *inter alia*, that the search was incident to a lawful arrest and therefore valid. The trial justice observed that there was no barrier between the living-room area, where the jacket was located, and the kitchen area, where defendant was placed under arrest. He further noted that at the time Detective O'Neil picked up the jacket, defendant was not handcuffed. The trial justice also referred to the presence of several other adults, who might have aided defendant, in the living-room area of the apartment at the time of defendant's arrest. Finally the trial justice noted that it was reasonable to assume that defendant would probably have passed within "lunge-and-leap" distance of the jacket when he was taken from the apartment.

▮ Nevertheless, we conclude that the trial justice erred in finding that the search was incidental to a lawful arrest and therefore reasonable under the *Chimel* rule. In determining the permissible scope of a search incident to an arrest, much depends on the particular facts of each case. Applying the principles as set forth in *Chimel* to the circumstances of this case, we believe that the record does not support the conclusion that the jacket lay within defendant's immediate control at the time of his arrest.

In considering the trial justice's findings, we find that he failed to give an approximation of the distance between the jacket and defendant at the time of the latter's arrest. Indeed, the trial justice specifically observed that he didn't know what that distance was. Although we eschew a mechanical reliance on any single factor, we think that some approximation of the distance between the arrestee and the object searched is fundamental to a determination of the question of whether an object lies within an arrestee's immediate control. *See, e. g., United States v. Weaklem*, 517 F.2d 70, 72 (9th Cir. 1975); *United States v. Patterson*, 447 F.2d 424, 425 (10th Cir. 1971), *cert. denied*, 404 U.S. 1064, 92 S.Ct. 748, 30 L.Ed.2d 752 (1972); *United States v. Manarite*, 314 F.Supp. 607, 614 (S.D.N.Y. 1970), *aff'd* 448 F.2d 583 (2 Cir.), *cert. denied*, 404 U.S. 947, 92 S.Ct. 298, 30 L.Ed.2d 264 (1971); *State v. Henderson*, 510 S.W.2d 813, 819 (Mo.App.1974). The trial justice instead placed undue weight on the absence of a barrier separating the living-room and the kitchen areas of the apartment. In *Chimel* the Court expressly declined to distinguish between single-room searches and more extensive searches, labeling such distinctions "highly artificial." *Chimel v. California*, 395 U.S. at 766, 89 S.Ct. at 2041, 23 L.Ed.2d at 695. The Court concluded that "[t]he only reasoned distinction is one between a search of the person arrested and the area within his reach on the one hand, and more extensive searches on the other." *Id.* at 766, 89 S.Ct. at 2041, 23 L.Ed.2d at 696 (footnote omitted). Thus, courts have found that a search of any part of a room that is not accessible to an arrestee is unreasonable even if the search does not extend beyond the room in which the arrest occurred. *United States v. Berenguer*, 562 F.2d 206, 210 (2d Cir. 1977); *United States v. Mapp*, 476 F.2d 67, 80 (2d Cir. 1973). Once an arrestee is under police control, the permissible scope of a search incident to an arrest narrows. *United States v. Griffith*, 537 F.2d 900, 904 (7th Cir. 1976); *United States v. Baca*, 417 F.2d 103 (10th Cir. 1969).

Although the record before us indicates that defendant apparently was not handcuffed at the time of the search in question, it is clear that several police officers were positioned around defendant, thereby effectively restricting the area within his immediate control. The mere presence within the room of persons other than defendant or the officers is not sufficient reason for extending the scope of a search incident to arrest. Although many courts have recognized the right of the police to conduct a quick and cursory check of a residence when they have reasonable grounds to believe there are other persons present who might present a security risk, *United States v. Phillips*, 593 F.2d 553, 556 (4th Cir. 1978), *cert. denied sub nom. Speech v. United States*, 441 U.S. 947, 99 S.Ct. 2169, 60 L.Ed.2d 1050 (1979); *United States v. Bowdach*, 561 F.2d 1160, 1168 (5th Cir. 1977); *United States v. Christophe*, 470 F.2d 865, 869 (2d Cir. 1972), *cert. denied sub nom. Pierro v. United States*, 411 U.S. 964, 93 S.Ct. 2140, 36 L.Ed.2d 684 (1973), the purpose of this type of search is to check for persons, not things; and the search is justified only when it is necessary to allow the police to ascertain the presence of anyone who might threaten their safety or destroy evidence, *United States v. Bowdach*, 561 F.2d at 1168–69. The search in this case has not been shown to be within the ambit of this doctrine. Similarly, the right of the police to search areas into which the arrestee may be expected to move, as well as the search of articles to be handed to the arrestee, is well settled when the movement or other acts are performed at the request of the arrestee. In that situation a limited search for weapons is reasonable. *E. g., United States v. Smith*, 565 F.2d 292 (4th Cir. 1977). When the police initiate the movement or other act, however, there is a greater likelihood that the police may be attempting to expand improperly the permissible scope of a search incident to arrest. *See, e. g., United States v. Griffith*, 537 F.2d at 904. Here, the state's explanation for the search of the jacket—that it was in anticipation of defendant's taking it along with him—is specious reasoning. Likewise, the trial jus-

tice's assumption that defendant would pass within "lunge-and-leap" distance of the revolver as he left the apartment is purely speculative because it is more than likely that defendant would have been handcuffed at that time and thus unable to exercise effective control over areas through which he passed. *See United States v. Jones*, 475 F.2d 723, 727–28 (5th Cir.), *cert. denied*, 414 U.S. 841, 94 S.Ct. 96, 38 L.Ed.2d 77 (1973). We therefore conclude on our own view of the record that the trial justice's conclusion that the jacket was within defendant's immediate control at the time of his arrest is unsupported.

■ The state nevertheless contends that the warrantless seizure of the revolver comes within the exception of the plain-view doctrine. To sustain a warrantless search under the plain-view doctrine, the seizing officer must have lawfully been in the position which permitted the object to fall within his view. *Coolidge v. New Hampshire*, 403 U.S. 443, 466–68, 91 S.Ct. 2022, 2038–39, 29 L.Ed.2d 564, 583–84 (1971); *State v. Marshall*, R.I., 387 A.2d at 1048. The discovery of the object must be made inadvertently. *Coolidge v. New Hampshire*, 403 U.S. at 469–71, 91 S.Ct. at 2040–41, 29 L.Ed.2d at 585–86; *see State v. Rattenni*, 117 R.I. 221, 225, 366 A.2d 539, 541–42 (1976). Furthermore, "[t]here must, of course, be a nexus * * * between the item to be seized and criminal behavior." *Warden v. Hayden*, 387 U.S. 294, 307, 87 S.Ct. 1642, 1650, 18 L.Ed.2d 782, 792 (1967); *City of Warwick v. Robalewski*, R.I., 385 A.2d 669, 672–73 (1978).

■ The record discloses that Detective O'Neil did not observe the revolver or any part of it until he had begun to pick up the jacket. There is, however, nothing in the record to justify this initial intrusion. As we concluded above, a search of the jacket was not within the scope of a search incident to the arrest of defendant. In addition, the state produced no evidence establishing a nexus between the jacket and some criminal behavior that might have brought the search of the jacket itself within the plain-view doctrine. That the jacket

belonged to defendant is not a sufficient nexus. *See Morton v. State*, 284 Md. 526, 531 n.2, 397 A.2d 1385, 1388 n.2 (1979). *See generally City of Warwick v. Robalewski*, R.I., 385 A.2d at 672–73. We therefore find that the warrantless seizure of the revolver was not reasonable under that plain-view doctrine. We conclude that the revolver was the fruit of an illegal search and therefore inadmissible in evidence.

■ We now direct our attention to the state's contention that the admission of the revolver in question, if error, was nevertheless harmless beyond a reasonable doubt. Having determined that defendant is entitled to a new trial of count 3 and count 5, our present inquiry need concern itself only with what effect our ruling should have on the convictions obtained on the remaining counts. A determination of whether error is harmless must turn upon whether there is a reasonable possibility that the error complained of contributed to the conviction. Before a federal constitutional error can be held harmless, we must be able to declare a belief that it was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 23–24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 710–11 (1967); *State v. Lachapelle*, 112 R.I. 105, 113, 308 A.2d 467, 471 (1973).

■ The testimony of Officer Superczynski, the complaining witness, was the core of the state's case against defendant. Officer Superczynski directly addressed almost every element of each crime with which defendant was charged. In particular, he testified to defendant's acquisition and possession of his service revolver during defendant's escape. Against the background of Officer Superczynski's uncontradicted testimony, the state introduced the illegally seized revolver. In *State v. Duffy*, 112 R.I. 276, 308 A.2d 796 (1973), we had occasion to consider the effect of tainted evidence under analogous circumstances. In *Duffy* this court dismissed the defendants' claim that illegally seized evidence had contributed to their convictions, stating, "We see no possibility that the additional items [illegally seized from] * * * the trunk contributed in any way to the

guilty verdicts. There was ample tangible evidence, apart from the material seized * * * [from] the trunk to incriminate defendants." *Id.* at 283, 308 A.2d at 800. In view of the strong testimonial evidence adduced to establish that defendant committed the offenses charged, we are persuaded that our reasoning in *Duffy* applies with equal force to the case before us, and we conclude that the erroneous admission of the revolver was harmless beyond a reasonable doubt.

### III

The defendant last contends that he was erroneously convicted and punished for multiple offenses arising out of the same set of facts. We note here that although defendant raised numerous different double-jeopardy objections below, he presses on appeal only three of these. We deem waived the double-jeopardy objections made below but not briefed or argued on appeal. Furthermore, in light of our decision in part I, *supra*, to overturn the convictions on count 3 and count 5, we need not address defendant's first double-jeopardy argument that conviction under both of these counts constituted an instance of double jeopardy.

### A

The defendant argues that under either the same-evidence test, as posited in *State v. Boudreau*, 113 R.I. 497, 322 A.2d 626 (1974), or the "rule of lenity," [3] two of the remaining convictions may not stand. He submits that as applied to the facts of this case, these principles require us to overturn both the assault conviction under count 7 and the conviction for carrying a firearm without a license under count 6. The state responds that in each pair of convictions challenged by defendant, the convictions under count 1 and count 7 and the convictions under count 4 and count 6 (the firearm convictions), each crime required proof of a fact that the other did not. The state

also submits that the rule of lenity is not applicable to this case because there is no doubt about the scope of, or the unit of conviction under, the criminal statutes in question.

A close reading of the record discloses that defendant did not properly preserve his double-jeopardy challenge to the firearm convictions. Although defendant timely asserted a battery of double-jeopardy challenges at trial, none of these included the one now argued in respect of the firearm convictions.

 The general rule is that on appeal we do not review objections not raised at trial. *State v. Pope*, R.I., 414 A.2d 781, 786–87 (1980). In certain limited circumstances, however, we will review alleged deprivations of basic constitutional rights for the first time on appeal. *State v. McGehearty*, R.I., 394 A.2d at 1351–52. Before we shall entertain such claims on appeal, the trial record must indicate clearly that defendant did not deliberately bypass the issue at trial and that the alleged deprivation of a basic constitutional right would not constitute harmless error. *Id.*, 394 A.2d at 1352.

At the threshold defendant argues that his failure to raise at trial the double jeopardy exception now asserted does not constitute a deliberate bypass because of the uncertainty in this area of the law and because he made so many other double-jeopardy challenges.

 We find, however, that the instant appeal is one of "the vast majority of cases * * * [in which] we are unable to resolve the deliberate bypass question on direct appeal." *State v. Duggan*, R.I., 414 A.2d 788, 791 (1980). In *McGehearty* we found the record not reasonably susceptible of the inference that trial counsel bypassed the due-process issue in that trial. *See State v. McGehearty*, 394 A.2d at 1352–53.

---

**3.** The "rule of lenity," according to defendant, is a canon of construction which operates to mitigate the harshness of the same-evidence test when the Legislature fails to make clear the appropriate unit of prosecution, *e. g., Bell v. United States*, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955), or when the applicability of overlapping criminal statutes is in doubt, *e. g., Prince v. United States*, 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957).

The crucial factor in our determination was that *McGehearty* raised on appeal a novel constitutional claim which we could not have reasonably expected his counsel to appreciate at the time of trial. *See State v. Pope,* 414 A.2d at 786–87. In the case before us no such claim was asserted. Moreover, we perceive no reason from the record before us to depart from the general rule that issues not raised at trial will not be considered for the first time on appeal.

### B

We last turn our attention to defendant's contention that, under either the same-evidence test or the rule of lenity, the count charging assault on a correctional officer (count 7) should have been merged with the count charging escape (count 1).

■■■■ At the outset we note our agreement with the state's assertion that the rule of lenity is not applicable to this case because there is no doubt about the unit of conviction under, or the scope of, § 11–25–2 in respect of the facts before us. The rule of lenity is merely a matter of statutory construction, *Milanovich v. United States,* 365 U.S. 551, 554, 81 S.Ct. 728, 729, 5 L.Ed.2d 773, 776 (1961), which is inapplicable when the legislative intent is clear, *Guerro v. Fitzpatrick,* 436 F.2d 378, 380 (1st Cir. 1971); *see Prince v. United States,* 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957); *Bell v. United States,* 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955). In *State v. Camerlin,* 116 R.I. 726, 360 A.2d 862 (1976), we rejected the contention that "because of the severe penalty prescribed by § 11–25–2, the word 'assault,' as used therein should be confined to ' * * * assaults connected to an escape or to assaults whose context is such to render them threats to penal discipline on the order of magnitude presented by an escape or an attempted escape.' " *Id.* at 733, 360 A.2d at 866 (footnote omitted). Today we reject the contention that as a matter of statutory construction a § 11–25–2 assault perpetrated in the course of a § 11–25–2 escape necessarily merges in the escape. As we held in *Camerlin,* the word "assault" in § 11–25–2 should be accorded

its ordinary meaning. *Id.* at 734, 360 A.2d at 867. We conclude that § 11–25–2 admits of no ambiguity, and therefore defendant's invocation of the rule of lenity is inappropriate.

We also reject defendant's contention that under the same-evidence test, the crimes were substantially the same and that therefore he has been placed in jeopardy twice for one illegal act. We have said that the question of double jeopardy does not depend solely on whether a defendant is tried once or twice for two crimes that arguably constitute the same offense. " 'The Fifth Amendment guarantee against double jeopardy prohibits both successive prosecutions for the same offense as well as multiple punishment for the same offense.' " *State v. Innis,* R.I., 391 A.2d 1158, 1165 (1978), *rev'd on other grounds,* —— U.S. ——, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980) (*quoting Newton v. State,* 280 Md. 260, 263, 373 A.2d 262, 264 (1977)).

■■ The rule followed in this state is the required or same-evidence test adopted by the United States Supreme Court and stated in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932),

> "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Id.* at 304, 52 S.Ct. at 182, 76 L.Ed. at 309.

We have consistently followed this rule. *State v. Grullon,* 117 R.I. 682, 685–88, 371 A.2d 265, 267–68 (1977); *State v. Boudreau,* 113 R.I. at 503, 322 A.2d at 629.

■■ The defendant does not dispute that under the test enunciated in *Blockburger,* assault and escape are distinct offenses. Rather, the defendant argues that under a fact-sensitive analysis he was indeed twice punished for the same offense because under the circumstances of this case the assault and escape counts punished the same conduct. *See generally Whitton v. State,* 479 P.2d 302, 304–14 (Alaska 1970).

To the contrary, it is clear that in the case before us the defendant committed wanton acts of assault upon correctional officer Superczynski, acts which were distinct from any acts of assault which may have been incidental to his escape. *See People v. Watson*, 31 Ill.App.3d 774, 335 N.E.2d 20 (1975). We are therefore not persuaded by the defendant's claim that he was twice placed in jeopardy.

The defendant's appeal is sustained in part and denied in part; the judgments of conviction under count 3 and count 5 of indictment No. 76–640 are reversed and a new trial ordered thereon; the judgments of conviction under count 1, count 4, count 6, and count 7 are affirmed; and the matter is remanded to the Superior Court for further proceedings not inconsistent with this opinion.

DORIS, J., did not participate.